# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**   **2. PLEASE TYPE OR PRINT**   **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Iraq Telecom Limited<br>v.<br>IBL Bank S.A.L. | SDNY | Denise Cote |
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br><br>Mar. 16, 2022 | District Court Docket No.:<br><br>21-cv-10940-DLC |
| | Date the Notice of Appeal was Filed:<br><br>Mar. 16, 2022 | Is this a Cross Appeal?<br><br>☐ Yes   ☑ No |

| Attorney(s) for Appellant(s):<br>☑ Plaintiff<br>☐ Defendant | Counsel's Name:<br>Kevin S. Reed | Address:<br>51 Madison Ave<br>22nd Floor<br>New York, NY 10010 | Telephone No.:<br>(212) 849-7000 | Fax No.:<br>(212) 849 7100 | E-mail:<br>kevinreed@quinnemanuel.com |
|---|---|---|---|---|---|
| Attorney(s) for Appellee(s):<br>☐ Plaintiff<br>☑ Defendant | Counsel's Name:<br>Mitchell R. Berger | Address:<br>2550 M Street NW<br>Washington, DC 20037 | Telephone No.:<br>(202) 457-6000 | Fax No.:<br>(202) 457-6315 | E-mail:<br>mitchell.berger@squirepb.com |

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>83 | Number of Exhibits Appended to Transcript:<br><br>0 | Has this matter been before this Circuit previously? ☐ Yes ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

## PART A:  JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party   ☐ Diversity<br>☑ Federal question (U.S. not a party)   ☐ Other (specify): _____ | ☐ Final Decision   ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b))<br>☑ Interlocutory Decision Appealable As of Right   ☐ Other (specify): _____ |

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B: DISTRICT COURT DISPOSITION (Check as many as apply)**

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| [✓] Pre-trial<br>[ ] During trial<br>[ ] After trial | [ ] Default judgment<br>[ ] Dismissal/FRCP 12(b)(1)<br>  lack of subject matter juris.<br>[ ] Dismissal/FRCP 12(b)(6)<br>  failure to state a claim<br>[ ] Dismissal/28 U.S.C. § 1915(e)(2)<br>  frivolous complaint<br>[ ] Dismissal/28 U.S.C. § 1915(e)(2)<br>  other dismissal | [ ] Dismissal/other jurisdiction<br>[ ] Dismissal/merit<br>[ ] Judgment / Decision of the Court<br>[ ] Summary judgment<br>[ ] Declaratory judgment<br>[ ] Jury verdict<br>[ ] Judgment NOV<br>[ ] Directed verdict<br>[✓] Other (specify): Order vacating attachment | [ ] Damages:        [ ] Injunctions:<br><br>[ ] Sought: $ _____   [ ] Preliminary<br>[ ] Granted: $ _____   [ ] Permanent<br>[ ] Denied: $ _____    [ ] Denied<br><br>**Attachment order of $42 million vacated except as to $3 milion** |

**PART C: NATURE OF SUIT (Check as many as apply)**

| 1. Federal Statutes | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|
| [ ] Antitrust   [ ] Communications   [ ] Freedom of Information Act<br>[ ] Bankruptcy   [ ] Consumer Protection   [ ] Immigration<br>[ ] Banks/Banking   [ ] Copyright ☐ Patent   [ ] Labor<br>[ ] Civil Rights   [ ] Trademark   [ ] OSHA<br>[ ] Commerce   [ ] Election   [ ] Securities<br>[ ] Energy   [ ] Soc. Security   [ ] Tax<br>[ ] Commodities   [ ] Environmental<br>[ ] Other (specify): _____ | [ ] Admiralty/ Maritime<br>[ ] Assault / Defamation<br>[ ] FELA<br>[ ] Products Liability<br>[ ] Other (Specify): | [ ] Admiralty/ Maritime<br>[✓] Arbitration<br>[ ] Commercial<br>[ ] Employment<br>[ ] Insurance<br>[ ] Negotiable Instruments<br>[ ] Other Specify | [ ] Civil Rights<br>[ ] Habeas Corpus<br>[ ] Mandamus<br>[ ] Parole<br>[ ] Vacate Sentence<br>[ ] Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| [ ] Hague Int'l Child Custody Conv.<br>[ ] Forfeiture/Penalty<br>[ ] Real Property<br>[ ] Treaty (specify): _____<br>[ ] Other (specify): _____ | [✓] Arbitration<br>[ ] Attorney Disqualification<br>[ ] Class Action<br>[ ] Counsel Fees<br>[ ] Shareholder Derivative<br>[ ] Transfer | [ ] Yes   [✓] No<br><br>Will appeal raise a matter of first impression?<br><br>[✓] Yes   [ ] No |

1. Is any matter relative to this appeal still pending below? [✓] Yes, specify: Petition to Confirm Arbitral Award    [ ] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)   Arises from substantially the same case or controversy as this appeal?      [ ] Yes    [✓] No

    (B)   Involves an issue that is substantially similar or related to an issue in this appeal?    [ ] Yes    [✓] No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: March 25, 2022 | Signature of Counsel of Record: /s/ Kevin S. Reed |
|---|---|

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**
1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
**CIVIL PRE-ARGUMENT STATEMENT (FORM C)**

**ADDENDUM A**

No. 22-540

District Court Docket 21-cv-10940-DLC

## I.     Nature of the Action

Appellant Iraq Telecom Limited ("Iraq Telecom") won an arbitration award against Respondent IBL Bank S.A.L. ("IBL") in September 2021 for declaratory relief that IBL and its two co-conspirators had committed fraud against Iraq Telecom and $3 million in attorney's fees awarded jointly and severally against IBL and its two co-conspirators. In December 2021, Telecom filed a subsequent arbitration seeking $97 million in damages resulting from the fraud perpetrated by IBL (the "Second Arbitration").

Iraq Telecom then filed a petition to confirm its $3 million Award in the District Court and moved for *ex parte* attachment under New York CPLR 6201 and 7502 of up to $100 million in IBL funds in its New York correspondent bank accounts, representing the combined total of the Award and the amount sought in the Second Arbitration. The District Court granted Iraq Telecom's *ex parte* attachment motion on January 19, 2022 and approximately $42 million in IBL's New York correspondent bank accounts were attached pursuant to that order.

However, on March 16, 2022, the District Court vacated the attachment order as to all but $3 million, relying upon arguments that IBL did not make and upon a novel finding that "exceptional circumstances" could warrant departure from statutory attachment factors and were present here.

Iraq Telecom is now left at severe risk of being unable to recover any damages won in the Second Arbitration because IBL is undisputedly insolvent, IBL admittedly has no other assets in the United States other than its New York correspondent accounts, and there is a high risk of dissipation of funds currently in IBL's New York correspondent accounts.

IBL seeks an emergency interim stay, upon which it believes the Court must act by March 22, 2022, and a stay pending appeal of the District Court's order vacating the attachment order in part. It will be moving for an expedited briefing schedule.

## II.     The Result Below

On March 16, 2016, the District Court entered an Opinion and Order granting Iraq Telecom's motion to confirm the attachment order only to the extent of $3 million and granting IBL's cross-motion to vacate the same Order in part. (ECF 112 at 48-49). The same day, the District Court entered an order vacating the attachment order entirely as to accounts at Citibank and JP Morgan Chase, and vacating it as to any amount greater than $3 million as to accounts at Bank of New York Mellon. (ECF 110).

### III.    Notice of Appeal and Docket Sheet

Attached as Exhibit 1 is a copy of the Notice of Appeal filed below (ECF 111). Attached as Exhibit 2 is a current copy of the District Court Docket Sheet.

### IV.    Relevant Opinions and Orders Forming the Basis of the Appeal

Attached as Exhibit 3 is a copy of the Opinion entered on March 16, 2022 (ECF 112). Attached as Exhibit 4 is a copy of the Order entered on Mach 16, 2022 (ECF 110).

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRAQ TELECOM LIMITED, | |
| Petitioner, | Civil Action No. 21-cv-10940 (DLC) |
| v. | |
| IBL BANK S.A.L, | |
| Respondent. | |

## <u>NOTICE OF APPEAL</u>

NOTICE IS HEREBY GIVEN that Petitioner Iraq Telecom Limited appeals to the U.S. Court of Appeals for the Second Circuit from the Court's March 16, 2022 Order (Dkt. 110) vacating in part the Court's Order of Attachment, and each and every part thereof.

DATED:  March 16, 2022                    Respectfully submitted,

                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP


                                          Kevin Reed

                                           51 Madison Avenue, 22nd Floor
                                           New York, NY 10010
                                           212-849-7000 Main Office Number
                                           212-849-7100 FAX

                                           Kristin Tahler
                                           865 S. Figueroa St., 10th Floor
                                           Los Angeles, CA 90017
                                           213-443-3000 Main Office Number
                                           213-443-3100 FAX

                                           Alex Loomis (*Pro hac vice* )
                                           111 Huntington Ave, Suite 520
                                           Boston, MA 02199
                                           617-712-7100 Main Office Number
                                           617-712-7200 FAX

                                           *Counsel for Petitioner Iraq Telecom Limited*

# Exhibit 2

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21-cv-10940-DLC

Iraq Telecom Limited v. IBL Bank S.A.L.

Assigned to: Judge Denise L. Cote

Cause: 09:201 Enforcement of Convention

Date Filed: 12/21/2021

Jury Demand: None

Nature of Suit: 890 Other Statutory Actions

Jurisdiction: Federal Question

**Plaintiff**

**ABC**
*TERMINATED: 01/27/2022*

V.

**Petitioner**

**Iraq Telecom Limited**                          represented by   **Kevin Samuel Reed**
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, NY 10010
212-702-8100
Fax: 212-702-8200
Email: kevinreed@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Hale Loomis**
Quinn Emanuel Urquhart & Sullivan LLP
111 Huntington Ave
Suite 520
Boston, MA 02199
617-712-7120
Email: alexloomis@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Kristin Tahler**
Quinn Emanuel Urquhart & Sullivan
865 S. Figueroa Street
Ste 10th Floor
Los Angeles, CA 90017
213-443-3615
Email: kristintahler@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DEF**
*TERMINATED: 01/27/2022*

V.

<u>**Respondent**</u>

**IBL Bank S.A.L.**                    represented by    **Gassan Adnan Baloul**
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas
Ste 26th Floor
New York, NY 10036
202-457-6155
Fax: 202-457-6315
Email: gassan.baloul@squirepb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Stewart Alonzo**
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas
Ste 26th Floor
New York, NY 10036
212-872-9831
Email: joseph.alonzo@squirepb.com
*ATTORNEY TO BE NOTICED*

**Mitchell Rand Berger**
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas
Ste 26th Floor
New York, NY 10036
212-872-9800
Fax: 212-872-9815
Email: mitchell.berger@squirepb.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/06/2022 | 5 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 01/06/2022) |
| 01/27/2022 | 14 | SEALED ORDER: Accordingly, it is hereby ORDERED that the motion for attachment is denied. IT IS FURTHER ORDERED that the motion to extend the sealing of this action is granted to the following extent. This action shall remain sealed until January 4, 2022, or in the event a renewed motion for attachment is filed on January 3, 2022, until such renewed motion is decided. This action shall remain sealed until January 4, 2022, or in the event a renewed motion for attachment is filed on January 3, 2022, until such renewed motion is decided. SO ORDERED. (Signed by Judge Denise L. Cote on 12/22/2021) *** This document was previously filed under seal in envelope #5 and unsealed by docket entry 13 (the unsealing Order). (tg) Modified on 1/28/2022 (tg). (Entered: 01/28/2022) |
| 01/27/2022 | 15 | SEALED ORDER: On December 22, 2021, an Order denied an ex parte motion for attachment filed by the petitioner, Iraq Telecom Limited ("Iraq Telecom"), without prejudice. Iraq Telecom renewed its motion on December 29. It is hereby ORDERED that this action shall remain sealed pending a further Order. IT IS FURTHER ORDERED that |

| | | |
|---|---|---|
| | | Iraq Telecom shall promptly file a proposed Order of Attachment that identifies the specific funds it seeks to attach by identifying the account numbers and banks. SO ORDERED. (Signed by Judge Denise L. Cote on 1/3/2022) (tg) *** This document was previously filed under seal in envelope #8 and unsealed by docket entry 13 (the unsealing Order). Modified on 1/28/2022 (tg). (Entered: 01/28/2022) |
| 01/27/2022 | 39 | ORDER GRANTING MOTION FOR LEAVE TO FILE VERIFIED PETITION TO CONFIRM FOREIGN ARBITRATION AWARD AND FOR AN EX PARTE ORDER OF ATTACHMENT UNDER SEAL temporarily granting 1 Motion for Leave to File Case Under Seal. It is therefore hereby ORDERED that the relief requested in the Motion is temporarily GRANTED. It is FURTHER ORDERED that: The Petition, the exhibits thereto and any related documents be filed temporarily under seal until Petitioner's ex parte motion for an order of attachment is decided by this Court and any levy permitted pursuant to an order of attachment is perfected; No party receiving the Petition, the exhibits thereto and any related documents in unredacted form shall make them available to anyone without (1) the consent of Iraq Telecom, or (2) further order of this Court. When a district judge is assigned to Plaintiff's case, Plaintiff shall renew its motion to keep the case under seal. In the absence of such a motion by December 29, 2021, the case will be unsealed. The Clerk of Court is directed to restrict access to this order to the selected party viewing level. SO ORDERED. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (Signed by Judge Jesse M. Furman on 12/15/2021) (ate) Modified on 2/1/2022 (ate). Modified on 2/1/2022 (ate). Modified on 2/8/2022 (ate). (Main Document 39 replaced on 2/8/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/01/2022) |
| 01/27/2022 | 40 | CIVIL COVER SHEET filed. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/01/2022) |
| 01/27/2022 | 41 | CIVIL COVER SHEET filed. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/01/2022) |
| 01/27/2022 | 42 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Orange S.A., Corporate Parent Agility Public Warehousing Company K.S.C.P. for Iraq Telecom Limited. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/01/2022) |
| 01/27/2022 | 43 | EXHIBIT. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit E, # 4 Exhibit G). This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 44 | MOTION for Attachment ex parte order of attachment. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 45 | PROPOSED ORDER GRANTING EX PARTE ATTACHMENT. Document filed by Iraq Telecom Limited. Related Document Number: 44 . This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) **Proposed Order to be reviewed by Clerk's Office staff.** Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 46 | PETITIONER'S RENEWED MOTION TO EXTEND SEAL. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |

| | | |
|---|---|---|
| 01/27/2022 | 47 | PROPOSED ORDER GRANTING PETITIONER'S RENEWED MOTION TO EXTEND FILING OF CIVIL ACTION UNDER SEAL: Document filed by Iraq Telecom Limited. Related Document Number: 46 . This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) **Proposed Order to be reviewed by Clerk's Office staff.** Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 48 | PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO EXTEND SEAL. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 49 | DECLARATION OF KRISTIN TAHLER IN SUPPORT OF PETITIONERS RENEWED MOTION TO EXTEND SEAL of Kristin Tahler in Support re: 47 Proposed Order,. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 50 | NOTICE OF APPEARANCE by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 51 | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR -** MOTION for Alex Loomis to Appear Pro Hac Vice. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) Modified on 2/7/2022 (vba). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 52 | AFFIDAVIT of Alex Loomis in Support re: 51 MOTION for Alex Loomis to Appear Pro Hac Vice. **Motion and supporting papers to be reviewed by Clerk's Office staff..** Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 53 | EXHIBIT A. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 54 | PROPOSED ORDER FOR ADMISSION PRO HAC VICE. Document filed by Iraq Telecom Limited. Related Document Number: 51 . This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) **Proposed Order to be reviewed by Clerk's Office staff.** Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 55 | MOTION for Kristin Tahler to Appear Pro Hac Vice. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 56 | AFFIDAVIT of Kristin Tahler in Support re: 55 MOTION for Kristin Tahler to Appear Pro Hac Vice. **Motion and supporting papers to be reviewed by Clerk's Office staff..** Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 57 | PROPOSED ORDER FOR ADMISSION PRO HAC VICE. Document filed by Iraq Telecom Limited. Related Document Number: 55 . This document was previously filed under seal in envelope # 2 and unsealed by docket entry 13 . (ate) **Proposed Order to be reviewed by Clerk's Office staff.** Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |

| 01/27/2022 | 58 | PETITIONER'S RENEWED MOTION FOR AN EX PARTE ORDER OF ATTACHMENT. for Attachment ex parte order of attachment. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 3 and unsealed by docket entry 13 .(ate) Modified on 2/2/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
|---|---|---|
| 01/27/2022 | 59 | DECLARATION OF KRISTIN TAHLER IN SUPPORT OF PETITIONER'S RENEWED MOTION FOR AN EX PARTE ORDER OF ATTACHMENT re: 58 MOTION for Attachment ex parte order of attachment. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 3 and unsealed by docket entry 13 .(ate) Modified on 2/2/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 60 | EXHIBIT A, B and D. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit B, # 2 Exhibit D) This document was previously filed under seal in envelope # 3 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 61 | PROPOSED ORDER GRANTING EX PARTE ATTACHMENT. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 3 and unsealed by docket entry 13 .(ate) **Proposed Order to be reviewed by Clerk's Office staff.** Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 62 | SUPPLEMENTAL DECLARATION OF KRISTIN TAHLER IN FURTHER SUPPORT OF PETITIONERS RENEWED MOTION FOR AN EX PARTE ORDER OF ATTACHMENT. re: 61 Proposed Order,. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 4 and unsealed by docket entry 13 .(ate) Modified on 2/2/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 63 | EXHIBIT A and B. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit B) This document was previously filed under seal in envelope # 4 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 64 | AFFIDAVIT OF FACSIMILE. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 6 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 65 | AFFIDAVIT OF SERVICE. of Latchme D. Drepaul. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 6 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 66 | AFFIDAVIT OF EMAILING. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 6 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 67 | AFFIDAVIT OF SERVICE. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 6 and unsealed by docket entry 13 .(ate) Modified on 2/2/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 68 | AFFIDAVIT OF SERVICE. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 6 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 69 | **Vacated in Part pursuant to the Order issued 3/16/2022, ECF # 110** SEALED ORDER GRANTING EX PARTE ATTACHMENT granting 44 Motion to Attach ; granting 58 Motion to Attach ; granting 32 Motion re: 44 MOTION for Attachment ex parte order of attachment., 58 MOTION for Attachment ex parte order of attachment., 32 MOTION TO CONFIRM EX PARTE ATTACHMENT ORDER . NOW THEREFORE, |

| | | |
|---|---|---|
| | | upon the ex parte motion of Petitioner through its attorneys Quinn, Emanuel, Urquhart & Sullivan, LLP, IT IS HEREBY ORDERED that Petitioner's renewed motion for an ex parte Order of Attachment is GRANTED and this Order of Attachment shall be effective immediately and shall remain so unless otherwise amended or vacated by this Court. AND IT IS FURTHER ORDERED that the amount to be secured by this Order of Attachment is $100 million. AND IT IS FURTHER ORDERED that Petitioner shall post a bond in the amount of $100,000 as security within 14 days of this Order of Attachment. AND IT IS FURTHER ORDERED that service of the summons and Petition upon Respondent shall be by international courier. This document was previously filed under seal in envelope # 7 and unsealed by docket entry 13 . (Signed by Judge Denise L. Cote on 1/19/2022) (ate) Transmission to Finance Unit (Cashiers) for processing. Modified on 2/2/2022 (ate). Modified on 2/8/2022 (ate). Modified on 3/16/2022 (jwh). (Entered: 02/02/2022) |
| 01/27/2022 | 70 | SEALED ORDER: It is hereby ORDERED that the January 19 Order of Attachment shall be served on respondent IBL by January 28, 2022. IT IS FURTHER ORDERED that this action shall be unsealed on January 28, 2022. This document was previously filed under seal in envelope # 7 and unsealed by docket entry 13 . (Signed by Judge Denise L. Cote on 1/19/2022) (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 71 | EXHIBIT. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 8 and unsealed by docket entry 13 . (ate) Modified on 2/2/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 72 | LETTER addressed to Judge Denise L. Cote from Quinn Emanuel Urquhart & Sullivan, LLP dated 1/6/2022 re: request for approval of proposed order. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 8 and unsealed by docket entry 13 . (ate) Modified on 2/2/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 73 | PROPOSED SEALED ORDER GRANTING EX PARTE ATTACHMENT. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 8 and unsealed by docket entry 13 .(ate) **Proposed Order to be reviewed by Clerk's Office staff.** Modified on 2/2/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 74 | SUMMONS IN A CIVIL ACTION as to IBL Bank S.A.L.. This document was previously filed under seal in envelope # 9 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 75 | PETITIONER'S PROOF OF UNDERTAKING. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit A) This document was previously filed under seal in envelope # 10 and unsealed by docket entry 13 . (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 76 | LETTER addressed to Judge Denise L. Cote from QUINN EMANUEL URQUHART & SULLIVAN, LLP dated 1/27/2022 re: informing court of intention to file motion. Document filed by Iraq Telecom Limited. This document was previously filed under seal in envelope # 11 and unsealed by docket entry 13 .(ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |
| 01/27/2022 | 77 | SEALED ORDER: It is hereby ORDERED that petitioner Iraq Telecom shall promptly serve the respondent IBL with the January 19 Order of Attachment, making such redactions to the Order as Iraq Telecom believes necessary. IT IS FURTHER ORDERED that any redactions shall be subject to review of the Court. This document was previously filed under seal in envelope # 12 and unsealed by docket entry 13 . (Signed by Judge Denise L. Cote on 1/27/2022) (ate) Modified on 2/8/2022 (ate). (Entered: 02/02/2022) |

| | | |
|---|---|---|
| 01/28/2022 | 16 | NOTICE OF APPEARANCE by Gassan Adnan Baloul on behalf of IBL Bank S.A.L... (Baloul, Gassan) (Entered: 01/28/2022) |
| 01/28/2022 | 17 | NOTICE OF APPEARANCE by Mitchell Rand Berger on behalf of IBL Bank S.A.L... (Berger, Mitchell) (Entered: 01/28/2022) |
| 01/28/2022 | 18 | NOTICE OF APPEARANCE by Joseph Stewart Alonzo on behalf of IBL Bank S.A.L... (Alonzo, Joseph) (Entered: 01/28/2022) |
| 01/28/2022 | 19 | SEALED DOCUMENT placed in vault..(jus) (Entered: 01/28/2022) |
| 01/28/2022 | 20 | ORDER: It is hereby ORDERED that the Clerk of Court shall unseal all documents and Orders filed in the above-captioned case, except for the following documents: (1) Iraq Telecom's Verified Petition to Confirm Foreign Arbitration, dated December 14, 2021 (the "Petition")(34 pages); (2) Exhibit F attached to the Petition, dated December 8, 2020 (37 pages); (3) Exhibit D attached to the Petition, dated April 23, 2021 (188 pages); (4) Exhibit H attached to the Petition, dated November 6, 2021 (41 pages); (5) Exhibit I attached to the Petition, dated November 22, 2021 (37 pages); (6) Iraq Telecom's Memorandum of Law in Support of Its Motion for an Ex Parte Attachment, dated December 21, 2021 (31 pages); and (7) Iraq Telecom's Memorandum of Law in Support of Its Renewed Motion for an Ex Parte Attachment, dated December 29, 2021 (31 pages). (8) Iraq Telecom's partial motion and supporting documents filed today, January 28, 2022. IT IS FURTHER ORDERED that Iraq Telecom's January 28 motion to file the above documents with redactions is granted. The petitioner shall promptly file the documents in redacted form on ECF. The petitioner shall also file under seal an unredacted version of each document. SO ORDERED. (Signed by Judge Denise L. Cote on 1/28/2022) (vfr) Transmission to Sealed Records Clerk for processing. (Entered: 01/28/2022) |
| 01/28/2022 | 21 | PETITION TO CONFIRM A FOREIGN ARBITRATION AWARD AND FOR AN EX PARTE ORDER OF ATTACHMENT IN AID OF ARBITRATION..Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit D, # 2 Exhibit F, # 3 Exhibit H, # 4 Exhibit I).(Reed, Kevin) (Entered: 01/28/2022) |
| 01/28/2022 | 22 | MEMORANDUM OF LAW in Support re: 21 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, *(PETITION FOR AN EX PARTE ORDER OF ATTACHMENT IN AID OF ARBITRATION)*. Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 01/28/2022) |
| 01/28/2022 | 23 | MEMORANDUM OF LAW in Support re: 21 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, *(OF RENEWED MOTION FOR AN EX PARTE ORDER OF ATTACHMENT)*. Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 01/28/2022) |
| 01/28/2022 | 24 | ***SELECTED PARTIES*** MEMORANDUM OF LAW re: 21 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, *(OF PETITION FOR AN EX PARTE ORDER OF ATTACHMENT IN AID OF ARBITRATION)*. Document filed by Iraq Telecom Limited, IBL Bank S.A.L.. Motion or Order to File Under Seal: 20 .(Reed, Kevin) (Entered: 01/28/2022) |
| 01/28/2022 | 25 | ***SELECTED PARTIES*** MEMORANDUM OF LAW re: 21 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, *(OF RENEWED MOTION FOR AN EX PARTE ORDER OF ATTACHMENT)*. Document filed by Iraq Telecom Limited, IBL Bank S.A.L.. Motion or Order to File Under Seal: 20 .(Reed, Kevin) (Entered: 01/28/2022) |
| 01/28/2022 | 26 | ***SELECTED PARTIES***NOTICE of VERIFIED PETITION TO CONFIRM A FOREIGN ARBITRATION AWARD AND FOR AN EX PARTE ORDER OF ATTACHMENT IN AID OF ARBITRATION re: 21 Petition to |

| | | |
|---|---|---|
| | | Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Iraq Telecom Limited, IBL Bank S.A.L.. (Attachments: # 1 Exhibit D, # 2 Exhibit F, # 3 Exhibit H, # 4 Exhibit I)Motion or Order to File Under Seal: 20 .(Reed, Kevin) (Entered: 01/28/2022) |
| 01/31/2022 | 27 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for Alexander Hale Loomis to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25658982. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Iraq Telecom Limited. (Attachments: # 1 Affidavit, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order).(Loomis, Alexander) Modified on 2/1/2022 (bcu). (Entered: 01/31/2022) |
| 01/31/2022 | 28 | MOTION to Seal *previously filed on Jan. 28, 2022*. Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 01/31/2022) |
| 01/31/2022 | 29 | DECLARATION of Nick Bortman in Support re: 28 MOTION to Seal *previously filed on Jan. 28, 2022*.. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10).(Reed, Kevin) (Entered: 01/31/2022) |
| 01/31/2022 | 30 | MEMORANDUM OF LAW in Support re: 28 MOTION to Seal *previously filed on Jan. 28, 2022*. . Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 01/31/2022) |
| 01/31/2022 | 31 | ***SELECTED PARTIES***NOTICE of Exhibits to Declaration of Nick Bortman in Support of Motion re: 29 Declaration in Support of Motion,. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit 3, # 2 Exhibit 4, # 3 Exhibit 5, # 4 Exhibit 6, # 5 Exhibit 7, # 6 Exhibit 8)Motion or Order to File Under Seal: 20 .(Reed, Kevin) (Entered: 01/31/2022) |
| 01/31/2022 | 32 | MOTION TO CONFIRM EX PARTE ATTACHMENT ORDER . Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 01/31/2022) |
| 01/31/2022 | 33 | MEMORANDUM OF LAW in Support re: 32 MOTION TO CONFIRM EX PARTE ATTACHMENT ORDER . . Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 01/31/2022) |
| 01/31/2022 | 34 | DECLARATION of Kristin Tahler in Support re: 32 MOTION TO CONFIRM EX PARTE ATTACHMENT ORDER .. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F).(Reed, Kevin) (Entered: 01/31/2022) |
| 02/01/2022 | 35 | LETTER addressed to Judge Denise L. Cote from Gassan A. Baloul dated February 1, 2022 re: Petitioners Motion to Confirm (ECF Nos. 32-34). Document filed by IBL Bank S.A.L...(Baloul, Gassan) (Entered: 02/01/2022) |
| 02/01/2022 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 27 MOTION for Alexander Hale Loomis to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25658982. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): Attorney Affidavit not notarized;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (bcu)** (Entered: 02/01/2022) |
| 02/01/2022 | 36 | MEMO ENDORSEMENT on re: 35 Letter filed by IBL Bank S.A.L. ENDORSEMENT: The parties shall consult and propose a briefing schedule. They shall also consult and propose an Order by 2/3/22 excluding any attachment of EFTs, as covered by Jaldhi 585 F3d at 20. (Signed by Judge Denise L. Cote on 2/1/2022) (vfr) (Entered: 02/01/2022) |

| 02/01/2022 | 37 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for Alexander Hale Loomis to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Iraq Telecom Limited. (Attachments: # 1 Affidavit, # 2 Exhibit A - Certificate of Good Standing, # 3 Text of Proposed Order). (Loomis, Alexander) Modified on 2/2/2022 (aea). (Entered: 02/01/2022) |
| 02/01/2022 | 38 | DECLARATION of Kristin Tahler in Support re: 32 MOTION TO CONFIRM EX PARTE ATTACHMENT ORDER .. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Reed, Kevin) (Entered: 02/01/2022) |
| 02/02/2022 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 37 MOTION for Alexander Hale Loomis to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff. The filing is deficient for the following reason(s): Missing Notarized Affidavit (Notary Stamp & Number). Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order. (aea)** (Entered: 02/02/2022) |
| 02/03/2022 | 78 | LETTER addressed to Judge Denise L. Cote from Gassan A. Baloul dated February 3, 2022 re: Proposed Order Pursuant to Memo Endorsement [ECF 36]. Document filed by IBL Bank S.A.L.. (Attachments: # 1 Text of Proposed Order).(Baloul, Gassan) (Entered: 02/03/2022) |
| 02/03/2022 | 79 | LETTER addressed to Judge Denise L. Cote from Kevin S. Reed dated February 3, 2022 re: Iraq Telecom Ltd. v. IBL Bank S.A.L., Civil Action No. 21-cv-10940 (DLC). Document filed by Iraq Telecom Limited. (Attachments: # 1 Text of Proposed Order). (Reed, Kevin) (Entered: 02/03/2022) |
| 02/04/2022 | 80 | LETTER addressed to Judge Denise L. Cote from Gassan A. Baloul dated February 4, 2022 re: Response to Petitioners Feb. 3, 2022 Letter [ECF No. 79]. Document filed by IBL Bank S.A.L...(Baloul, Gassan) (Entered: 02/04/2022) |
| 02/04/2022 | 81 | LETTER addressed to Judge Denise L. Cote from Kevin S. Reed dated February 4, 2022 re: Iraq Telecom Ltd. v. IBL Bank S.A.L., Civil Action No. 21-cv-10940 (DLC). Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 02/04/2022) |
| 02/04/2022 | 82 | MEMO ENDORSEMENT on re: 81 Letter filed by Iraq Telecom Limited. The parties shall confer and present a proposed order by 1:00 pm today. The parties shall be available for a 2:00 pm telephone call, using landlines if possible. A scheduling Order shall follow. (Signed by Judge Denise L. Cote on February 4, 2022) (ST) (Entered: 02/04/2022) |
| 02/04/2022 | 83 | ORDER re: 82 Memo Endorsement. ORDERED that there shall be a conference in the above-captioned case today at 2:00 pm. Due to the ongoing COVID-19 pandemic, the conference will be held telephonically. The parties shall use the following dial-in credentials for the telephone conference: Dial-in: 888-363-4749. Access code: 4324948. The parties shall use a landline if one is available. (Signed by Judge Denise L. Cote on February 4, 2022) (ST) (Entered: 02/04/2022) |
| 02/04/2022 | 84 | ORDER re: 78 Letter filed by IBL Bank S.A.L., 79 Letter, filed by Iraq Telecom Limited, 80 Letter filed by IBL Bank S.A.L. ORDERED that IBL's proposed briefing schedule is adopted. IBL shall file opposition to Iraq Telecom's January 31 motion to confirm and any cross-motion by February 14. Iraq Telecom's reply in support of its motion and opposition to IBL's cross-motion, if any, shall be filed by February 28. Any reply shall be due by March 14. The parties shall provide the Court with two courtesy copies of their submissions at the time they are filed. (Signed by Judge Denise L. Cote on February 4, 2022) (ST) (Entered: 02/04/2022) |

| | | |
|---|---|---|
| 02/04/2022 | 85 | PROPOSED ORDER. Document filed by IBL Bank S.A.L., Iraq Telecom Limited. Related Document Number: 82 ..(Reed, Kevin) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 02/04/2022) |
| 02/04/2022 | | **\*\*\*NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 85 Proposed Order was reviewed and approved as to form. (km)** (Entered: 02/04/2022) |
| 02/04/2022 | 86 | **Vacated in Part pursuant to the Order issued 3/16/2022, ECF # 110** ORDER MODIFYING ATTACHMENT ORDER: THEREFORE, IT IS HEREBY ORDERED that this Court's January 19, 2022 Order of Attachment is modified effective immediately, as follows: no attachment or levy shall be made on any funds transferred to, from, or through the IBL Accounts after the entry of this Order as part of an Electronic Funds Transfer for the ultimate benefit of a third party other than Respondent a branch of Respondent, or person acting on Respondent's behalf; and IT IS FURTHER ORDERED that, notwithstanding anything above, all funds in the IBL Accounts as of the date of this Order shall remain attached and levied pursuant to this Court's January 19, 2022 Order of Attachment pending further order of the Court; and IT IS FURTHER ORDERED Petitioner shall forthwith serve a copy of this Order upon Court Support by personal service or email and shall immediately file proof of service via ECF, and Court Support shall forthwith serve this Order on the banks listed herein. (Signed by Judge Denise L. Cote on 2/4/2022) (jwh) Modified on 2/4/2022 (jwh). Modified on 3/16/2022 (jwh). (Entered: 02/04/2022) |
| 02/04/2022 | | Minute Entry for proceedings held before Judge Denise L. Cote: Telephone Conference held on 2/4/2022. (Court Reporter Rose Prater) (jwh) (Entered: 02/04/2022) |
| 02/04/2022 | 87 | MOTION for Kristin Tahler to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25690800. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Iraq Telecom Limited. (Attachments: # 1 Affidavit, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order).(Tahler, Kristin) (Entered: 02/04/2022) |
| 02/04/2022 | 88 | AFFIDAVIT OF SERVICE of January 19, 2022 Sealed Order granting Ex Parte Attachment served on IBL Bank S.A.L. on January 28, 2022. Service was accepted by Josephine Habib, employee of IBL Bank. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Tahler, Kristin) (Entered: 02/04/2022) |
| 02/07/2022 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 87 MOTION for Kristin Tahler to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25690800. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 02/07/2022) |
| 02/07/2022 | 89 | ORDER granting 87 Motion for Kristin Tahler to Appear Pro Hac Vice. (HEREBY ORDERED by Judge Denise L. Cote)(Text Only Order) (jwh) (Entered: 02/07/2022) |
| 02/07/2022 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 51 MOTION for Alex Loomis to Appear Pro Hac Vice. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): The Affidavit Is Not Notarized;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order. (vba)** (Entered: 02/07/2022) |
| 02/10/2022 | 90 | AFFIDAVIT OF SERVICE of "So Ordered" Order Modifying Attachment Order by Hon. Denise Cote, USDJ, dated February 4, 2022 served on Garnishee Banks Citi, JP Morgan, |

| | | |
|---|---|---|
| | | and Bank of New York Mellon on February 4, 2022. Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 02/10/2022) |
| 02/14/2022 | 91 | TRANSCRIPT of Proceedings re: CONFERENCE held on 2/4/2022 before Judge Denise L. Cote. Court Reporter/Transcriber: Rose Prater, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/7/2022. Redacted Transcript Deadline set for 3/17/2022. Release of Transcript Restriction set for 5/16/2022..(Moya, Goretti) (Entered: 02/14/2022) |
| 02/14/2022 | 92 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 2/4/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 02/14/2022) |
| 02/14/2022 | 93 | CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, . Document filed by IBL Bank S.A.L...(Baloul, Gassan) (Entered: 02/14/2022) |
| 02/14/2022 | 94 | MEMORANDUM OF LAW in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, . *and in Opposition re: 32 MOTION to Confirm Ex Parte Attachment Order*. Document filed by IBL Bank S.A.L...(Baloul, Gassan) (Entered: 02/14/2022) |
| 02/14/2022 | 95 | DECLARATION of Karim Habib in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by IBL Bank S.A.L.. (Attachments: # 1 Exhibit 1 -Intermediate Circular No. 567, # 2 Exhibit 2 - Basic Circular No. 150, # 3 Exhibit 3 - Banking Control Commission Memorandum No. 13-2020, # 4 Exhibit 4 -IBL customer deposits under Basic Circular No. 150, # 5 Exhibit 5 - Basic Circular No. 158, # 6 Exhibit 6 - IBL records under Basic Circular No. 158, # 7 Exhibit 7 - Basic Circular No. 154).(Baloul, Gassan) (Entered: 02/14/2022) |
| 02/14/2022 | 96 | DECLARATION of Randa Abousleiman in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by IBL Bank S.A.L.. (Attachments: # 1 Exhibit 1 -CCP Articles 817 and 819, # 2 Exhibit 2 -CCP Article 820, # 3 Exhibit 3 -Legal Commentary re. CCP Article 820, # 4 Exhibit 4 -COC Article 137, # 5 Exhibit 5 -Basic Circular No. 150, # 6 Exhibit 6 -Basic Circular No. 158, # 7 Exhibit 7 -Basic Circular No. 154).(Baloul, Gassan) (Entered: 02/14/2022) |
| 02/14/2022 | 97 | DECLARATION of Nakhle Khoneisser in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by IBL Bank S.A.L.. (Attachments: # 1 Exhibit 1 -Outward Transfers from November 2021 to February 2022, # 2 Exhibit 2 -Inward Transfers from November 2021 to February 2022, # 3 Exhibit 3 - Examples of EFT Records, # 4 Exhibit 4 - Record of Correspondent Account Balances on February 1, 2022, # 5 Exhibit 5 Record of Frozen Inward Transfers).(Baloul, Gassan) (Entered: 02/14/2022) |
| 02/25/2022 | 98 | NOTICE OF APPEARANCE by Kristin Tahler on behalf of Iraq Telecom Limited.. (Tahler, Kristin) (Entered: 02/25/2022) |
| 02/28/2022 | 99 | MEMORANDUM OF LAW in Opposition re: 93 CROSS MOTION to Vacate 69 Order |

| | | |
|---|---|---|
| | | on Motion to Attach,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, . *AND REPLY IN SUPPORT OF PETITIONERS MOTION TO CONFIRM EX PARTE ATTACHMENT ORDER*. Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 02/28/2022) |
| 02/28/2022 | 100 | DECLARATION of Kristin Tahler in Opposition re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16).(Reed, Kevin) (Entered: 02/28/2022) |
| 02/28/2022 | 101 | DECLARATION of Samy Markbaoui in Opposition re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by Iraq Telecom Limited. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11).(Reed, Kevin) (Entered: 02/28/2022) |
| 02/28/2022 | 102 | DECLARATION of Nasri Antoine Diab in Opposition re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by Iraq Telecom Limited..(Reed, Kevin) (Entered: 02/28/2022) |
| 03/02/2022 | 103 | ORDER: It is hereby ORDERED that an oral argument will be held on Wednesday March 16, 2022 at 10:00 a.m. in Courtroom 18B, 500 Pearl Street. IT IS FURTHER ORDERED that all individuals seeking entry to 500 Pearl Street must complete a questionnaire before being allowed entry into the courthouse. To gain entry to 500 Pearl Street, follow the instructions provided here, as further set forth in this Order. ( Oral Argument set for 3/16/2022 at 10:00 AM in Courtroom 18B, 500 Pearl Street, New York, NY 10007 before Judge Denise L. Cote.) (Signed by Judge Denise L. Cote on 3/2/2022) (vfr) (Entered: 03/02/2022) |
| 03/14/2022 | 104 | REPLY MEMORANDUM OF LAW in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, . . Document filed by IBL Bank S.A.L...(Baloul, Gassan) (Entered: 03/14/2022) |
| 03/14/2022 | 105 | DECLARATION of Karim Habib in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by IBL Bank S.A.L.. (Attachments: # 1 Exhibit 1 Audit Report, # 2 Exhibit 2 Correspondent Account Balances Chart, # 3 Exhibit 3 Excerpts Audited Financials 2016-2019, # 4 Exhibit 4 Dec. 18, 2019 Letter from IBLs Auditor).(Baloul, Gassan) (Entered: 03/14/2022) |
| 03/14/2022 | 106 | DECLARATION of Ziad El-Khoury in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by IBL Bank S.A.L.. (Attachments: # 1 Exhibit 1 - Article 7 of the Lebanese Code of Money and Credit (CMC), # 2 Exhibit 2- Article 192 of the CMC, # 3 Exhibit 3 - Article 301 of the Lebanese Code of Obligations and Contracts (COC), # 4 Exhibit 4 - English translation of Law number 193, # 5 Exhibit 5 - Article 302 of the COC).(Baloul, Gassan) (Entered: 03/14/2022) |
| 03/14/2022 | 107 | DECLARATION of Boutros Kanaan in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by IBL Bank S.A.L...(Baloul, Gassan) (Entered: 03/14/2022) |
| 03/14/2022 | 108 | DECLARATION of Gassan A. Baloul in Support re: 93 CROSS MOTION to Vacate 69 Order on Motion to Attach,,,,,,,,,,,, Order on Motion for Miscellaneous Relief,,,,, .. Document filed by IBL Bank S.A.L. (Attachments: # 1 Exhibit 1 Lebanese Attachment Order).(Baloul, Gassan) (Entered: 03/14/2022) |

| | | |
|---|---|---|
| 03/14/2022 | 109 | ORDERED that the parties Iraq Telecom Ltd. and Intercontinental Bank of Lebanon S.A.L. shall be prepared to address the following questions, as further set forth in this Order. (Signed by Judge Denise L. Cote on March 14, 2022) (ST) (Entered: 03/14/2022) |
| 03/16/2022 | | Minute Entry for proceedings held before Judge Denise L. Cote: Oral Argument held on 3/16/2022 re: 21 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, filed by Iraq Telecom Limited. (See Transcript) (Court Reporter Kristen Carannante) (jwh) (Entered: 03/16/2022) |
| 03/16/2022 | 110 | ORDER re: 69 Order on Motion to Attach: ORDERED that the January 19 Order of Attachment, as amended by the February 4 Order, is vacated as to Citibank and JP Morgan Chase. IT IS FURTHER ORDERED that, as to Bank of New York Mellon, the January 19 Order of Attachment is vacated as to any amount greater than $3 million. (Signed by Judge Denise L. Cote on 3/16/2022) (jwh) (Entered: 03/16/2022) |
| 03/16/2022 | 111 | NOTICE OF INTERLOCUTORY APPEAL from 110 Order,. Document filed by Iraq Telecom Limited. Filing fee $ 505.00, receipt number ANYSDC-25871734. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Reed, Kevin) Modified on 3/16/2022 (tp). (Entered: 03/16/2022) |
| 03/16/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 111 Notice of Interlocutory Appeal,. (tp) (Entered: 03/16/2022) |
| 03/16/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 111 Notice of Interlocutory Appeal, filed by Iraq Telecom Limited were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/16/2022) |
| 03/16/2022 | 112 | OPINION AND ORDER granting in part and denying in part 93 CROSS MOTION to Vacate 69 Order on Motion to Attach, 32 MOTION TO CONFIRM EX PARTE ATTACHMENT ORDER Iraq Telecom's motion to confirm the January 19 Attachment Order is granted to the extent of $3 million. IBL's cross-motion to vacate the same Order is granted in part. Iraq Telecom's motion to expand the January 19 Order is denied. (Signed by Judge Denise L. Cote on March 16, 2022) (ST) Modified on 3/17/2022 (jwh). (Entered: 03/16/2022) |
| 03/16/2022 | 113 | ORDER: As stated on the record at an Oral Argument held on March 16, it is hereby ORDERED that IBL shall file opposition to Iraq Telecom's December 14, 2021 verified petition to confirm a foreign arbitration award by March 25, 2022. Any reply shall be filed by April 1. The parties shall provide the Court with two courtesy copies of their submissions at the time they are filed. SO ORDERED. (Signed by Judge Denise L. Cote on 3/16/2022) (jca) (Entered: 03/16/2022) |

Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------- X
                                       :
 IRAQ TELECOM LIMITED,                 :
                                       :
                      Petitioner,      :      21cv10940 (DLC)
                                       :
            -v-                        :      OPINION AND ORDER
                                       :
 IBL BANK S.A.L.                       :
                                       :
                      Respondent.      :
                                       :
-------------------------------------- X
```

APPEARANCES:

For petitioner Iraq Telecom Ltd.:
Kevin Samuel Reed
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

Kristin Tahler
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa Street, Ste 10th Floor
Los Angeles, CA 90017

Alexander Hale Loomis
Quinn Emanuel Urquhart & Sullivan LLP
111 Huntington Ave, Suite 520
Boston, MA 02199

For respondent IBL Bank S.A.L.:
Mitchell Rand Berger
Joseph Stewart Alonzo
Gassan Adnan Baloul
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas, Ste 26th Floor
New York, NY 10036

DENISE COTE, District Judge:

Iraq Telecom Ltd. ("Iraq Telecom") seeks confirmation of an attachment of $42 million held in the New York-based correspondent bank accounts of Intercontinental Bank of Lebanon S.A.L. ("IBL"), a Lebanese bank. For the following reasons, an attachment of $3 million is granted.

## Background

Iraq Telecom is a joint venture between Agility Public Warehousing Company KSCP ("Agility"), a Kuwaiti logistics company, and Orange S.A. ("Orange"), a French telecommunications corporation. It is a significant but minority shareholder in Korek Telecom Company LLC ("Korek"), a telecommunications company in Iraq. Iraq Telecom holds a 44% stake in International Holdings Limited ("IHL"), a United Arab Emirates holding company which is the sole shareholder of Korek. The remainder of IHL's shares are held by Korek International (Management) Ltd. ("CS Ltd."), a holding company in the Cayman Islands. Through CS Ltd., Sirwan Saber Mustafa -- also known as Barzani -- is IHL's largest shareholder and Chairman of the Board, as well as Korek's co-founder and managing director.

Iraq Telecom wears a second hat as well, as an unsecured creditor of Korek. In March 2011, Korek, IHL, Iraq Telecom, Barzani, and CS Ltd. entered into a Shareholders' Agreement

providing that Korek's repayment of shareholder loans would be prioritized <u>pari passu</u> (the "Shareholder Agreement").[1]  In July 2011, Iraq Telecom lent Korek $285 million through a transaction with IHL (the "Iraq Telecom Loan").  It is this loan that brings Iraq Telecom before this Court.

In late 2011, Korek sought a second loan on an urgent basis to pay a licensing fee owed to the Iraqi government.  Barzani arranged for IBL to provide a $150 million loan to Korek (the "IBL Loan").  IBL, a joint stock company registered in Lebanon, is a commercial and retail bank with twenty-one branches in Lebanon, one in Cyprus, and one in Iraq.  In writing, Barzani described the IBL Loan to Iraq Telecom as "unsecured."

To extend the loan, IBL required that the Iraq Telecom Loan be subordinated to the IBL Loan.  Iraq Telecom agreed to do so and on December 14, 2011, a Subordination Agreement was executed by Iraq Telecom, IBL, Korek, and IHL.  Under the Subordination Agreement, Korek could not make payments on the Iraq Telecom Loan as long as the IBL Loan was in default.  Iraq Telecom was advised that Barzani would be personally guaranteeing the IBL Loan, and Barzani is named as the Guarantor to the Borrower, Korek, in the executed term loan agreement. The Subordination Agreement is governed by the law of Lebanon

---

[1] <u>Pari passu</u> means "[p]roportionally; at an equal pace; without preference."  Black's Law Dictionary (11th ed. 2019).

and requires any dispute among the parties to be resolved through an arbitration in Beirut, Lebanon.  The IBL Loan issued on December 21, 2011, and carried an annual interest rate of 13.25%, which increased to 15.25% upon default.[2]

In 2015, Korek defaulted on the IBL Loan.  Thereafter, IBL demanded both full repayment and, invoking the Subordination Agreement, that Korek cease repaying the Iraq Telecom Loan. Iraq Telecom eventually learned that the IBL Loan was not an unsecured loan.  In 2017, Iraq Telecom discovered that in 2011 Barzani had put up $155 million in cash collateral for the IBL Loan in an IBL account held in his name.

Iraq Telecom takes the position that it has been defrauded by Barzani and IBL in connection with the Subordination Agreement through the following scheme.  Barzani and IBL misrepresented the nature of the IBL Loan:  despite informing Iraq Telecom in 2011 that it was unsecured loan, it was a fully collateralized loan.  Because of this deception, Iraq Telecom agreed to the IBL Loan that carried an exorbitant interest rate and agreed to the Subordination Agreement.  Because of the Subordination Agreement, after Korek's default on the IBL Loan,

---

[2] In the arbitration proceeding brought by Iraq Telecom against IBL, Korek, and IHL, described below, Iraq Telecom asserted that the 13.25% interest rate was "far in excess of what prevailing market practices could justify for a fully cash collateralised loan" and that, as of 2017, an appropriate market rate for a fully collateralized loan would have been "around 4.1%."

4

Korek no longer made payments to Iraq Telecom on the Iraq Telecom Loan. Finally, IBL secretly paid Barzani most of the money it received from Korek as interest payments on the IBL Loan. Iraq Telecom asserts that this deprived it of receiving in pari passu its just share of all loan repayments by Korek to its shareholders under the March 2011 Shareholder Agreement.

In June 2018, Iraq Telecom brought an arbitration proceeding in Lebanon against IBL, Korek, and IHL.[3] During the arbitration, Iraq Telecom withdrew its request for damages and sought only declaratory relief. As explained in the arbitration award, Iraq Telecom did so

> in order to eliminate any argument regarding double-
> recovery issues with parallel and subsequent
> proceedings, and also to narrow the focus of [the]
> arbitration to the critical issue: the invalidity of
> the Subordination Agreement and its entitlement to
> damages (in principle) flowing directly or indirectly
> from entry into the Subordination Agreement.

On September 21, 2021, Iraq Telecom won an arbitration award of attorney's fees in the amount of $3 million jointly and severally against IBL, Korek, and IHL (the "Award").[4] The arbitrators agreed that Iraq Telecom had been defrauded.

---

[3] The arbitration was held before the Lebanese Arbitration Center of the Chamber of Commerce, Industry and Agriculture of Beirut and Mount Lebanon.

[4] On January 14, 2022, IBL initiated an exequatur proceeding in a Lebanese court seeking to annul the Award.

The Award finds that (1) the parties understood the
Subordination Agreement and the IBL Loan agreement to be part of
the same overall transaction; (2) representations that the IBL
Loan was not fully collateralized were key to inducing Iraq
Telecom into subordinating its loan and approving Korek's entry
into the IBL Loan; (3) IBL "clearly and knowingly participated
in the deception of" Iraq Telecom by fraudulently concealing the
existence of the cash collateral; and (4) Barzani's knowledge of
that deceit should be imputed to both Korek and IHL.

The Award explains that

> each of the three Respondents actively participated in
> the commission of dol [fraud]. Indeed, had any one of
> the Respondents disclosed to [Iraq Telecom] the
> existence of the cash collateral, [Iraq Telecom] would
> not have entered into the Subordination Agreement.
> Therefore, for the maneuver to succeed, it required
> the participation of all three Respondents. . . . As
> for [IBL], the Arbitral Tribunal points out that the
> latter denied the existence of the cash collateral
> . . . and fraudulently concealed its existence.

The Award adds that

> [I]t appears obvious that [IBL and Korek] did not wait
> until . . . the day after the signing of the
> Subordination Agreement, to start discussions on the
> cash collateral, the significant amount of which,
> [U.S. Dollar] 155 million, was transferred . . . the
> day before the IBL Loan Agreement was executed.
> [Barzani] and [IBL] must have agreed on the provision
> of the cash collateral far in advance (even prior to
> the date of execution of the Subordination Agreement)
> given the large sum of money involved. . . . [T]he
> Respondents' plan [was] carefully orchestrated in
> order to conceal the fact that [Barzani] was in
> reality providing a shareholder loan and to prioritise
> [Barzani's] creditor-rights over [Iraq Telecom's],

> notwithstanding [Barzani] agreeing to the contrary in
> the [Shareholder Agreement].  This scheme cannot be
> disputed given the fact that [Barzani] earned a 12.75%
> p.a. deposit rate, which equates to around LIBOR plus
> 12% p.a., that being more than 96% of the total
> interest expense paid by [Korek] to [IBL] was paid to
> [Barzani].

Having found that under Lebanese law IBL had participated in a

scheme with Korek and IHL to commit dol,[5] or fraud, a majority of

the tribunal declared that the Subordination Agreement was null

and void.

On December 13, 2021, Iraq Telecom initiated a second

arbitration in Lebanon against IBL seeking damages resulting

from the fraud (the "Second Arbitration").  In the Second

Arbitration, Iraq Telecom seeks at least $97 million of the $148

million in interest payments that Korek has paid to IBL since

2015.[6]

Iraq Telecom also commenced a separate arbitration on April

23, 2021, against Korek, CS Ltd., and Barzani in connection with

an alleged bribery scheme by Barzani to influence the Government

of Iraq to order the expropriation of Iraq Telecom's indirectly-

---

[5] According to the Award, under Lebanese Law, liability for dol
as codified in Articles 202, 208, 209, and 233 of the Lebanese
Code of Obligations and Contracts may include both fraudulent
acts with intent to deceive a contractual counterparty and
fraudulent concealment (réticence dolosive) where a party is
under a duty to disclose a material fact.

[6] The demand of at least $97 million in damages is calculated at
a rate of 65.52% of the $148 million in payments that Korek made
to IBL since July 2015.

held shares in Korek.  In that arbitration, which is pending,
Iraq Telecom asserts that an IBL executive involved in the
Subordination Agreement fraud also conspired with Barzani in
furtherance of the expropriation scheme.

On December 21, Iraq Telecom filed in this Court a sealed
petition for confirmation of the Award and moved for an ex parte
order of attachment of all of IBL's property within the
district.  That motion was denied with leave to renew on
December 22.  The Order of denial required Iraq Telecom to
identify deposits owned by IBL in New York and currently in the
possession of a New York bank, and to address the implications
of Shipping Corp. of India v. Jaldhi Overseas Pte Ltd., 585 F.3d
58, 70 (2d Cir. 2009) ("Jaldhi").

Iraq Telecom renewed its motion on December 29.  In its
Memorandum of Law, Iraq Telecom argued that

> Iraq Telecom does not seek to attach [electronic fund
> transfers ("EFTs")] passing through a New York
> intermediary bank on their way to an account owned by
> IBL.  It seeks to attach specific bank accounts that
> belong to IBL . . . .  The [New York bank] garnishees
> are thus not intermediary banks, with respect to IBL,
> but rather IBL's own banks holding IBL's own property
> in IBL's name.  Neither [Jaldhi] nor New York law bars
> attachment of a defendant's own bank accounts. . . .
> In any event, this Court can clarify in its proposed
> order that the proposed attachment would not extend to
> EFTs.

(citation omitted).  On January 3, 2022, the Court ordered Iraq
Telecom to submit a revised proposed order of attachment that

8

"identifies the specific funds it seeks to attach by identifying the account numbers and banks."  Iraq Telecom filed that revised order on January 6.

On January 19, an <u>ex parte</u> Order of Attachment of up to $100 million on four identified accounts held by IBL at three New York correspondent banks was entered.  The January 19 Order also required Iraq Telecom to post an undertaking in the amount of $100,000 within fourteen days.  Proof of the undertaking was filed on February 2.  This action was unsealed on January 28.

As of February 1, the following funds were attached pursuant to the January 19 Order, amounting in total to roughly $42 million.  The amounts attached were:  JPMorgan Chase Bank NA: $10,845,102.29; Citibank NA: $13,306,188.73; Bank of New York Mellon: $18,187,691.18 and CAD 338,095.00.[7]

IBL contends that approximately $4.5 million of the attached funds represents inward transfers, or midstream EFTs.  On January 28, IBL filed a letter motion seeking to modify the Attachment Order to exclude EFTs going forward.  With consent of Iraq Telecom, that request was granted on February 4.  The modified attachment order reads:

> [N]o attachment levy shall be made on any funds
> transferred to, from, or through the IBL Accounts
> after the entry of this Order as part of an Electric
> Funds Transfer for the ultimate benefit of a third

---

[7] CAD refers to Canadian dollars.

party other than [IBL], a branch of [IBL], or person acting on [IBL's] behalf.

On January 31, Iraq Telecom moved to confirm the January 19 ex parte Order of Attachment and the attachment of $100 million, and to expand the scope of the Order to include all of IBL's property within this district.  On February 14, IBL opposed the motion and cross-moved to vacate the Order of Attachment.  Iraq Telecom filed a reply on its own motion and opposed IBL's cross-motion on February 28.  These motions became fully submitted on March 14, when IBL filed its reply in support of its motion to vacate the attachment.

Oral argument was held on March 16.  At its conclusion, the Court vacated the January 19 attachment as to any amount greater than $3 million.[8]  A schedule was set for IBL to oppose the petition to confirm the Award.

## Discussion

Iraq Telecom has moved to confirm the Order of Attachment and to expand the attachment.  IBL has opposed the motion and cross-moved to vacate the attachment.  After the legal standards governing these applications are set out, the motions to confirm and vacate will be addressed.  Finally, Iraq Telecom's application for an expanded attachment will be addressed.

---

[8] The attachment was vacated in its entirety as to Citibank NA and JPMorgan Chase.

I.   Legal Standard

   A. Attachment in New York

   Attachment is available in a federal court "under the circumstances and in the manner provided by the law of the state in which the district court is held."  Cap. Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 219 (2d Cir. 2006) ("Capital Ventures I") (quoting Fed. R. Civ. P. 64).  "Under New York law, an attachment bars any sale, assignment or transfer of, or any interference with the property attached."  Cap. Ventures Int'l v. Republic of Argentina, 652 F.3d 266, 270 ("Capital Ventures II") (2d Cir. 2011) (quoting N.Y. C.P.L.R. § 6124(b)).  "Attachment is a harsh remedy, and is construed narrowly in favor of the party against whom the remedy is invoked."  VisionChina Media Inc. v. S'holder Representative Servs., LLC, 967 N.Y.S.2d 338, 345 (1st Dep't 2013) (citation omitted); see also J.V.W. Inv. Ltd. v. Kelleher, 837 N.Y.S.2d 650, 651 (1st Dep't 2007) ("J.V.W") (attachment is a "drastic provisional remedy").  Because of the effects of an attachment on property rights, due process rights attach.  Connecticut v. Doehr, 501 U.S. 1, 12 (1991).

   The statutory purpose of the attachment remedy in New York is two-fold: "to obtain quasi in rem jurisdiction over the property of non-resident defendants and provide security for potential judgments."  Capital Ventures I, 443 F.3d at 221.  The

11

grounds for an attachment are set out in § 6201 of the New York
Civil Practice Law and Rules ("N.Y. C.P.L.R.").  As pertinent
here, § 6201 provides:

> An order of attachment may be granted in any action .
> . . where the plaintiff has demanded and would be
> entitled . . . to a money judgment against one or more
> defendants, when:
>
> 1.  the defendant . . . is a foreign corporation not
> qualified to do business in the state; or
>
> 3.  the defendant, with intent to defraud his
> creditors or frustrate the enforcement of a judgment
> that might be rendered in plaintiff's favor, has
> assigned, disposed of, encumbered or secreted
> property, or removed it from the state or is about to
> do any of these acts.

N.Y. C.P.L.R. § 6201(1), (3).  Section 6201(1) thus allows
"attachments against nonresidents when appropriate to secure the
judgment, even when unnecessary to secure jurisdiction." ITC
Entm't, Ltd. v. Nelson Film Partners, 714 F.2d 217, 220 (2d Cir.
1983).  An attachment pursuant to § 6201(3) requires a showing
of an intent to defraud or frustrate.  Halse v. Hussain, 147
N.Y.S.3d 148, 150 (3d Dep't 2021).

Beyond showing that there is at least one ground for an
attachment as identified in § 6201, a plaintiff seeking an order
of attachment in New York must also show, pursuant to § 6212(a),
that "there is a cause of action," that "it is probable that the
plaintiff will succeed on the merits," and that "the amount
demanded from the defendant exceeds all counterclaims known to

the plaintiff." <u>Capital Ventures I</u>, 443 F.3d at 219 (quoting N.Y. C.P.L.R. § 6212(a)).

Section 6223 governs motions to vacate or modify orders of attachment. "Under N.Y. C.P.L.R. 6223(b), a plaintiff faced with a motion to vacate or modify an attachment must show that it still meets the [statutory] requirements and must also show the need for continuing the levy." <u>Capital Ventures II</u>, 652 F.3d at 272-73. On a motion to vacate, the plaintiff bears the burden of proof to "establish[] the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits." N.Y. C.P.L.R. § 6223(b); <u>see also</u> <u>Halse</u>, 147 N.Y.S.3d at 150. Pursuant to § 6223(a), if "the court determines that the attachment is unnecessary to the security of the plaintiff, it shall vacate the order of attachment." N.Y. C.P.L.R. § 6223(a).

B. Attachment in Aid of Arbitration

When the attachment sought is in aid of arbitration, § 7502(c) applies, and not the statutory grounds provided in § 6201. Section 7502(c) authorizes attachment as a provisional remedy

> in connection with an arbitration that is pending or
> that is to be commenced inside or outside this state .
> . . but <u>only</u> upon the ground that the award to which
> the applicant may be entitled may be <u>rendered</u>
> <u>ineffectual</u> without such provisional relief. The
> provisions of articles 62 and 63 of this chapter shall
> apply to the application . . . except that <u>the sole</u>

13

ground for the granting of the remedy shall be as stated above.

N.Y. C.P.L.R. § 7502(c) (emphasis added). Accordingly, "the standards generally applicable to attachments pursuant to CPLR 6201(3), such as sinister maneuvers or fraudulent conduct, are not required to be shown in an application pursuant to CPLR 7502(c)." Cty. Natwest Sec. Corp. USA v. Jesup, Josephthal & Co., 579 N.Y.S.2d 376, 377 (1st Dep't 1992) ("Cty. Natwest").

The requirement that the applicant demonstrate that an arbitration award may be rendered ineffectual without an attachment is an "indispensable" but not the exclusive showing an applicant must make. SG Cowen Sec. Corp. v. Messih, 224 F.3d 79, 83 (2d Cir. 2000) ("Messih"). While § 7502(c) supersedes § 6201, the considerations of § 6212 continue to apply to applications for attachment under § 7502(c). Id.; see also Founders Ins. Co. v. Everest Nat. Ins. Co., 839 N.Y.S.2d 474, 475 (1st Dep't 2007).

In sum, to secure an order of attachment in aid of arbitration, or to defeat a motion to vacate an attachment procured in aid of arbitration, the applicant must demonstrate a cause of action, a likelihood of success on the merits in the arbitration, that the amount of the claim exceeds any meritorious counterclaim, and that the arbitral award may be rendered ineffectual in the absence of an attachment. In

14

addition, a court may weigh any other considerations relevant to an application for equitable relief, including whether the harm done to the party subject to the attachment "would be substantial and irreparable." Messih, 224 F.3d at 84.  A prejudgment deprivation of property through attachment presents a risk of an "erroneous deprivation" and may not occur without due process. Doehr, 501 U.S. at 13.

    1.   Likelihood of Success on the Merits

    "The likelihood of success is . . . measured in terms of the likelihood of success in arbitration." Messih, 224 F.3d at 84.  Ordinarily, success on the merits in arbitration "cannot be predicted with the confidence a court would have in predicting the merits of a dispute awaiting litigation in court." Id.  This is because an "arbitration is frequently marked by great flexibility in procedure, choice of law, legal and equitable analysis, evidence, and remedy." Id.

    In contrast, where a final arbitration award has issued and a court is asked to confirm the award, "[t]he confirmation of an arbitration award is a summary proceeding." Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F.4th 144, 160 (2d Cir. 2021) (citation omitted).  "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm

the award." <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted).

A district court's ability to reject a foreign arbitration award in particular is "strictly limited." <u>Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.</u>, 126 F.3d 15, 19 (2d Cir. 1997). The recognition and enforcement of foreign arbitral awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention," or the "Convention"), as implemented by the Federal Arbitration Act, 9 U.S.C. § 201, <u>et seq.</u> Article III of the New York Convention directs that each signatory nation, which includes both Lebanon and the United States, "shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." Convention art. III.

> Under the New York Convention, the country in which the award is made is said to have <u>primary</u> jurisdiction over the arbitration award. The Convention specifically contemplates that the state in which, or under the law of which, [an] award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief. . . . All other signatory States are <u>secondary</u> jurisdictions, in which parties can only contest whether that State should enforce the arbitral award. Courts in countries of secondary jurisdiction may refuse enforcement only on the limited grounds specified in Article V of the New York Convention.

16

CBF Industria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58,
71 (2d Cir. 2017) (citation omitted).  In a secondary
jurisdiction, "[g]iven the strong public policy in favor of
international arbitration, the party seeking to avoid summary
confirmance of an arbitral award has the heavy burden of proving
that one of the seven defenses" enumerated in Article V applies.
VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities
Partners II L.P., 717 F.3d 322, 325 (2d Cir. 2013) ("VRG")
(citation omitted).  Article V(1)(e) provides, however, that a
court may refuse to recognize or enforce a final arbitral award
if "[t]he award has not yet become binding on the parties, or
has been set aside or suspended by a competent authority of the
country in which, or under the law of which, that award was
made."  Convention art. V(1)(e).

Provisions of the New York Convention "anticipate the
possibility of a party seeking confirmation in one country even
though nullification proceedings are underway in another."
Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de
Chihuahua S.A.B. de C.V., 970 F.3d 1269, 1299 (10th Cir. 2020),
cert. denied, 141 S. Ct. 2793 (2021) ("CIMSA").  Article VI of
the Convention states:

> If an application for the setting aside or suspension
> of the award has been made to a competent authority
> referred to in article V(1)(e), the authority before
> which the award is sought to be relied upon may, if it
> considers it proper, adjourn the decision on the

17

> enforcement of the award and may also, on the
> application of the party claiming enforcement of the
> award, order the other party to give suitable
> security.

Convention art. VI (emphasis added).

The Convention therefore does not require a party seeking enforcement of an award in a secondary jurisdiction -- here, the United States -- to await the conclusion of all appeals of the award that may be pursued in the primary jurisdiction -- here, Lebanon.  See Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 864 F.3d 172, 176 (2d Cir. 2017). The Tenth Circuit has observed that "American judges hold -- virtually unanimously -- that under the New York Convention an arbitration award becomes binding when no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal)" and that "a court maintains the discretion to enforce an arbitral award even when nullification proceedings are occurring in the country where the award was rendered."  CIMSA, 970 F.3d at 1298 (citation and emphasis omitted) (collecting cases); see also Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 367 (5th Cir. 2003).

   2.   Rendered Ineffectual

Where the ground for attachment is to secure payment, the applicant must demonstrate "an identifiable risk that the

defendant will not be able to satisfy the judgment."
VisionChina Media, 967 N.Y.S.2d at 345-46; see also Halse, 147
N.Y.S.3d at 152.  "The risk should be real, whether it is a
defendant's financial position or past and present conduct . . .
the defendant's history of paying creditors, or a defendant's
stated or indicated intent to dispose of assets."  VisionChina
Media, 967 N.Y.S.2d at 346.  In other words, "[t]here must be
more than a showing that the attachment would, in essence, be
'helpful.'"  Id. (citation omitted).  The Appellate Division has
held that "demonstrating the possibility, if not the likelihood,
that absent the attachment being requested, the ultimate
arbitration award would be severely compromised" will satisfy
the petitioner's burden under § 7502(c).  Cty. Natwest, 579
N.Y.S.2d at 377; see also Qwil PBC v. Landow, 119 N.Y.S.3d 116,
117, leave to appeal dismissed in part, denied in part, 35
N.Y.3d 1061 (1st Dep't 2020) (citation omitted).

Courts have found, pursuant to § 7502(c), that pending or
final arbitration awards may be rendered ineffectual absent
attachment where the plaintiff shows that the respondent is
potentially insolvent, has deliberately liquidated or
transferred assets, is a shell company without appreciable
assets, has historically failed to pay creditors, or has stated
an intent to remove assets from the jurisdiction.  See Shah v.
Com. Bank Ob'Edinennyi Investitsionnyi Bank, No. 09 CV 6121(HB),

2010 WL 743043, at *3 (S.D.N.Y. Mar. 4, 2010) (collecting cases). In Shah, the district court declined to issue an attachment in aid of arbitration when the applicant argued that the attachment was necessary because the object of the attachment petition had challenged the effort to enforce a prior judgment. The court reasoned that that effort was "not the same" as evidence that this arbitration award would "be 'rendered ineffectual' without the attachment." Id. By contrast, in Sivault Sys., Inc. v. Wondernet, Ltd., No. 05 CIV.0890(RWS), 2005 WL 681457 at *4 (S.D.N.Y. Mar. 25, 2005), the district court granted an attachment in aid of arbitration where the respondent held no other U.S. assets, had a negative net worth, and had borrowed money secured by all of its assets. And recently, in Port Auth. of New York & New Jersey v. Weiss & Hiller, P.C., 94 N.Y.S.3d 245, 245-46 (1st Dep't 2019), the Appellate Division affirmed a TRO freezing escrow funds pursuant to N.Y. C.P.L.R. § 7502(c) where the defendant was threatened with insolvency.

    3. Discretion

In the context of an application for an attachment under § 6201(1), whether to grant a motion for an order of attachment "rests within the discretion of the court." VisionChina Media, 967 N.Y.S.2d at 345. A court's discretion must be guided, however, by the purposes of the attachment remedy. Capital

20

<u>Ventures I</u>, 443 F.3d at 221.  Thus, where a "statutory ground
for attachment exists [under § 6201] and both need and
likelihood of success are established," a district court's
"discretion does not permit denial of the remedy for some other
reason, at least absent extraordinary circumstances and perhaps
even then."  <u>Id.</u> at 222.

In <u>Capital Ventures I</u>, the Second Circuit reversed a
district court's denial of a motion for an order of attachment.
The petitioner sought an attachment on a reversionary interest
in collateral securing certain bonds issued by Argentina.  The
court found that the applicant, which had a senior lien on the
property, had both satisfied the requirements of §§ 6201(1) and
6212 and demonstrated a continuing need for attachment pursuant
to § 6223.  <u>Id.</u> at 223.  The court observed that to the extent a
district court exercises discretion, it is limited to weighing
the evidence and balancing competing considerations with respect
to each requirement of the attachment order.  <u>Id.</u>  A court
abuses its discretion if it "applies legal standards incorrectly
or relies upon clearly erroneous findings of fact, or proceeds
on the basis of an erroneous view of the applicable law."  <u>Id.</u>
at 222 (citation omitted).[9]

---

[9] <u>Capital Ventures I</u> observed that even though the statutory
standard for vacating an order of attachment "varies slightly
from the standard for granting the order in the first instance,"

Capital Ventures I did not reach the question of whether
New York law allows discretionary denial of an otherwise
appropriate attachment based on public policy.  It observed,
however, that "[w]e can conceive, perhaps, of a situation in
which an order of attachment might be against the public
interest for some reason not addressed in the CPLR."  Id. at
223.

In a succeeding opinion addressing another iteration of the
Capital Ventures litigation, the Second Circuit again had no
occasion to decide which "extraordinary circumstances" might
allow a court to exercise its discretion as a matter of public
policy and deny a § 6201 attachment even though a petitioner had
met all statutory requirements.  Capital Ventures II, 652 F.3d
at 273.  In deciding that no extraordinary circumstances were
present, it observed that "it is inevitable that attachments
will have consequences for third parties, and sometimes even
third parties who themselves share an interest in the relevant
assets."  Id.  In Capital Ventures II, the private third-parties
were other bondholders, and the consequences of the attachment
were "not dire" for them since they would get no less than what
they had originally bargained for.  Id.  Similarly, the
consequences for the public interests -- there, the country of

---

a court's discretion is also limited when addressing
applications to vacate an attachment.  443 F.3d at 223 n.6.

Argentina -- were not extraordinary, as it had not shown that the attachment would "have a substantial effect on its finances or its ability to access the capital markets."  Id.

The New York Appellate Division has upheld a denial of a motion for an attachment for reasons beyond finding that the plaintiff had failed to meet the statutory requirements.  In Cargill Fin. Servs. Int'l, Inc. v. Bank Fin. & Credit Ltd., 896 N.Y.S.2d 317 (1st Dep't 2010), the Appellate Division upheld the lower court's decision to deny the plaintiff's broad request to restrain all funds in the defendant bank's New York correspondent accounts on the basis that

> a substantial part of the funds therein was held for the benefit of third-party clients of defendant who used the accounts to transact foreign business in U.S. currency.  Thus, the wholesale attachment of all funds in the accounts would have interfered with innocent third parties' access to their money.  As such, it was within the court's discretion to deny plaintiff's attachment application.

Id. at 317.  The Court reached this result without finding that a foreign bank's customers had a property interest in the funds held in the New York correspondent account.  It rested its decision instead on "[t]he nature of correspondent banking and its importance in international transactions."  Id.

In J.V.W., the Appellate Division vacated the trial court's "retroactive attachment" granted to continue an attachment previously entered by a federal court, finding that there was no

need to secure the defendant's assets where personal
jurisdiction was not at issue and a liquidator was already
securing the defendant's assets in connection with a parallel
bankruptcy in the Bahamas.  837 N.Y.S.2d at 651.  The Appellate
Division held that "[u]nder these circumstances, the attachment
merely gives plaintiffs an unwarranted priority over [the
defendants'] other creditors, which is simply not the intended
purpose of CPLR 6201."  Id. (citation omitted).

    4.  Posting of a Bond

If an attachment is granted, the plaintiff must post an
"undertaking, in a total amount fixed by the court, but not less
than five hundred dollars" that shall be paid to the defendant
"if it is finally decided that the plaintiff was not entitled to
an attachment of the defendant's property."  N.Y. C.P.L.R.
§ 6212(b).  "The fixing of the amount of an undertaking is a
matter within the sound discretion of the [trial court]."
Olympic Ice Cream Co. v. Sussman, 54 N.Y.S.3d 690, 692 (2d Dep't
2017).  The amount of the undertaking, however, "must not be
based upon speculation and must be rationally related to the
damages the defendants might suffer if the court later
determines that the relief to which the undertaking relates
should not have been granted."  Congregation Erech Shai Bais
Yosef, Inc. v. Werzberger, 138 N.Y.S.3d 542, 546 (2d Dep't 2020)
(citation omitted).

C. Attachable Property, EFTs and Correspondent Banks

The question of whether a given property interest is attachable is governed by state law.  See Jaldhi, 585 F.3d at 70.  "Any debt or property against which a money judgment may be enforced . . . is subject to attachment."  N.Y. C.P.L.R. § 6202.  "It is beyond cavil that attachment will only lie against the property of the debtor, and that the right to attach the property is only the same as the defendant's own interest in it."  Doe v. JPMorgan Chase Bank, N.A., 899 F.3d 152, 157 (2d Cir. 2018).  In general, "[u]nder New York law, the party who possesses property is presumed to be the party who owns it.  When a party holds funds in a bank account, possession is established, and the presumption of ownership follows."  Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 313 F.3d 70, 86 (2d Cir. 2002) (citation omitted).

An EFT is "nothing other than an instruction to transfer funds from one account to another."  Calderon-Cardona v. Bank of New York Mellon, 770 F.3d 993, 996 n.1 (2d Cir. 2014) (citation omitted).  "EFTs function as a chained series of debits and credits between the originator, the originator's bank, any intermediary banks, the beneficiary's bank, and the beneficiary."  Doe, 899 F.3d at 156 (citation omitted).  EFTs "are a unique type of transaction to which ordinary rules do not necessarily apply."  Id. (citation omitted).

25

"Whether or not midstream EFTs may be attached or seized depends upon the nature and wording of the statute pursuant to which attachment and seizure is sought."  Calderon-Cardona, 770 F.3d at 1001 (citation omitted).  The Second Circuit has held that under Article 4 of the New York Uniform Commercial Code, which governs EFTs in New York banks,

> the only entity with a property interest in an EFT while it is midstream is the entity immediately preceding the bank "holding" the EFT in the transaction chain.  In the context of a blocked transaction, this means that the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests.

Id. at 1002.

Correspondent bank accounts facilitate international financial transactions.

> A correspondent bank account is a domestic bank account held by a foreign bank, similar to a personal checking account used for deposits, payments and transfers of funds.  Correspondent accounts facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States.

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 165 n.3 (2d Cir. 2013) (citation omitted).  Under New York law, the customers of a foreign bank generally have no property interest in a correspondent account that the bank maintains in the United States.  See Sigmoil Res., N.V. v. Pan Ocean Oil Corp. (Nigeria), 650 N.Y.S.2d 726, 727 (1st Dep't 1996).  The

26

New York Appellate Division has held that "[n]either the originator who initiates payment nor the beneficiary who receives it holds title to the funds in the account at the correspondent bank," and that a "funds transfer is complete at the moment the receiving bank receives the credit message, not when the beneficiary acquires the funds." Id.

New York courts have emphasized the dangers of attaching correspondent accounts in an effort to restrain the assets of a foreign bank's customer. In Sigmoil, the Appellate Division observed that

> Great care must be taken to avoid impeding the role of correspondent accounts in the facilitation of international transactions. . . . If New York permits correspondent bank accounts to be regularly subject to attachment after a credit has been made by a foreign bank to its local customers, the entire system of correspondent banking, in which New York banks play an important role, will be disrupted.

Id. (citation omitted). "To hold otherwise would be at the cost of diminution in confidence in the system of correspondent banking that is invaluable to international financial transactions." Id. (citation omitted).

II. Application

Pursuant to the Order of January 19, Iraq Telecom attached approximately $42 million in IBL correspondent bank accounts held in three New York banks. As described below, Iraq Telecom has shown that it succeeded in its first arbitration against IBL

27

and is entitled to an attachment of the $3 million in attorney's fees awarded in that arbitration.  It has failed to show, however, that it is likely to succeed in recovering from IBL the $97 million it seeks in its pending arbitration.  It has shown a likelihood of success in receiving an award of at most roughly $5.92 million.[10]  Iraq Telecom has carried its burden to show that the Award will be ineffectual without an attachment since IBL appears to be insolvent.  It has also shown that it has a cause of action and the award it has received exceeds the amount of any IBL counterclaim.

Finally, there are extraordinary circumstances here that must be weighed in considering this attachment petition.  They include the impact on IBL's creditors, including its account holders, the impact on the Lebanese economy of the collapse of one of its more viable financial institutions, and the broader effect on New York banks from an attachment of funds in correspondent bank accounts.

---

[10] Iraq Telecom alleges that in the scheme executed by IBL and Barzani, IBL funneled 96% of Korek's interest payments on the IBL Loan to Barzani.  In the Second Arbitration, Iraq Telecom demands in pari passu its share of those interest payments made by Korek since July 2015, which totals about $148 million.  IBL allegedly retained 4% of the $148 million, or about $5.92 million.

28

A.    Likelihood of Success on the Merits

1.    Confirmation of the $3 Million Final Award

Iraq Telecom has demonstrated that it is likely to succeed on its request to confirm the $3 million Award.  The Award was entered on September 21, 2021 and is subject to immediate confirmation in this district pursuant to the New York Convention.  A briefing schedule has been set on the petition for confirmation of the Award.

IBL has commenced an annulment action in Lebanon and contends that that filing "suspends enforcement" of the Award under Lebanese law.  It does not do so in this country. Pursuant to the Convention, to which both Lebanon and the United States have agreed, the Award is entitled to confirmation and enforcement.

If it were necessary to predict the outcome of the annulment action, and it is not, IBL has not shown that it is likely to succeed.  IBL presses two arguments in the annulment action.  Its first is that the evidence of the 2011 Barzani deposit of $155 million in an IBL bank account, which Iraq Telecom obtained through a 28 U.S.C. § 1782 petition in this district, was wrongly admitted in the arbitration.  See In re Iraq Telecom Ltd., No. 18MC458(LGS)(OTW), 2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019).  IBL challenged the admissibility of this evidence before the arbitration panel and has not shown

29

that a Lebanese court will conclude that the panel was without authority to receive this evidence.

The second ground for annulment advanced by IBL is a purported conflict by a member of the arbitration panel.  The member had disclosed the relationship giving rise to the claimed conflict and IBL waived the conflict.  IBL has not shown that it will succeed in vacating the Award on this ground either.

2.  Confirmation of the $97 Million Demand

Iraq Telecom has failed to show that it is likely to receive an award of $97 million against IBL in its pending arbitration.  The Award describes in detail a scheme among Barzani, entities he controls, and IBL to deprive Korek's minority shareholder -- Iraq Telecom -- of its right to repayment of its loan to Korek in pari passu.  As a result of that scheme, Iraq Telecom was deprived of $97 million.  This sum represents interest payments paid to IBL that should have gone to Iraq Telecom.  According to the Award, however, all but roughly $5.92 million flowed through IBL to Barzani.  Therefore, should the panel assigned to the pending arbitration adopt in full the findings set out in the Award, it is entirely conceivable that it would limit any future award against IBL to the roughly $5.92 million that it retained.

Arbitrators are permitted to render decisions that weigh many factors beyond those that create a verdict in a court of

30

law.  See Messih, 224 F.3d at 84.  Because of arbitrators'
latitude and the disparity in the extent to which participants
in the fraud profited from it, Iraq Telecom has failed to show
that it will succeed in obtaining an award of $97 million
against IBL.

Iraq Telecom argues that it is likely to establish joint
and several liability in the Second Arbitration brought against
IBL.  It points out that joint and several liability is
established under Lebanese law if defendants have acted in
concert or if it is impossible to determine the proportion of
damages attributable to each defendant.[11]  Iraq Telecom has shown
that it is likely to demonstrate in the Second Arbitration that
IBL acted in concert with Barzani to defraud Iraq Telecom.
Despite that showing, however, it has not succeeded in showing
that it is likely to obtain an award of $97 million against IBL
alone or jointly and severally against IBL and others.  As

---

[11] IBL has submitted a declaration of Randa Abousleiman, one of
IBL's attorneys in the arbitration.  Abousleiman asserts that to
impose joint and several liability, Article 137 of the Lebanese
Code of Obligations and Contracts requires a showing that

   (i) those persons acted in concert;

   (ii) it is impossible to determine the proportion of
   damages attributable to each of those persons.

According to the Award, to the extent Article 127 applies, a
plaintiff need show only one of these elements.

described in the Award, IBL retained only a small portion of the damages Iraq Telecom seeks.

Iraq Telecom next argues that the amount of the damages award that it is likely to obtain through the Second Arbitration is "irrelevant" and cites to Shah for the proposition that likelihood of success on the merits may be found even if "the amount is far from certain." 2010 WL 743043, at *2. The Shah court found that the applicant had demonstrated that the amount sought through the attachment -- to reimburse it for the costs of enforcing an arbitration award -- was "far from frivolous." Id. It nonetheless declined to issue an attachment because the petitioner had not demonstrated that the potential award from the arbitration would be rendered ineffectual without the attachment. Id. at *3. Shah therefore offers little guidance on the issue of uncertainty in the amount that will be awarded in an arbitration.

In this case, Iraq Telecom has not shown that it is likely to receive an award of more than $5.92 million in damages through the pending arbitration. Iraq Telecom declined to seek from the first arbitration panel a determination of what the amount awarded in damages against IBL should be. This Court will not presume, even in light of the detailed findings of fraud in the Award, that the Second Arbitration panel will assess against IBL the full amount of damages that Iraq Telecom

identifies here but declined to request in the first
arbitration.

B.    Ineffectiveness

Iraq Telecom has shown that any arbitration award may be
rendered ineffectual without a prejudgment attachment of IBL
assets.  This includes the Award of $3 million.

Iraq Telecom has shown that IBL is likely insolvent.  For
evidence of IBL's financial condition, Iraq Telecom principally
relies on the 2021 Lebanon Country Commercial Guide of the U.S.
Commercial Service (the "DOC Guide"),[12] which is a publication
issued by a section of the U.S. Department of Commerce's
International Trade Administration; a 2020 research report of a
Washington, D.C.-based think tank the Foundation for Defense of
Democracy ("FDD Report"); and news articles.[13]  The DOC Guide and
news articles, from publications such as the New York Times,[14] Al

---

[12] U.S. Commercial Serv., Dep't of Commerce, Lebanon Country
Commercial Guide 2021, at 29-30 (2021),
https://lb.usembassy.gov/wp-content/uploads/sites/200/2021-
Lebanon-Country-Commercial-Guide-Final.pdf.

[13] James Rickards, Crisis in Lebanon: Anatomy of a Financial
Collapse 17-19, 53-54, Foundation for Defense of Democracy (Aug.
2020), https://www.fdd.org/wp-content/uploads/2020/08/fdd-
monograph-crisis-in-lebanon.pdf.

[14] David Leonhardt & Sanam Yar, Lebanon's Crisis, N.Y. Times
(Oct. 14, 2021),
https://www.nytimes.com/2021/10/14/briefing/lebanon-financial-
crisis-lira.html; Ben Hubbard & Liz Alderman, As Lebanon
Collapses, the Man With an Iron Grip on Its Finances Faces
Questions, N.Y. Times (Aug. 4, 2021),

Jazeera,[15] and Reuters,[16] report generally on the economic crisis
in Lebanon that began in 2019.  That crisis is described below.
The FDD Report, titled Anatomy of a Financial Collapse, was
published in August 2020 and reports that once the true exchange
rate is applied to IBL's assets, liabilities, and shareholder
equity as of December 31, 2018, the bank was insolvent.  The FDD
Report nonetheless opines that IBL is one of five "viable" banks
in Lebanon, and that a reorganization of the Lebanese economy
via a merger of failing banks into those viable banks is one way
out of its crisis.

Iraq Telecom also relies on an independent audit of the
consolidated financial statements of IBL and its subsidiaries as
of December 31, 2019.[17]  The audited statements show that IBL had
just over $6 billion in assets and $5.6 billion in liabilities
when Lebanon's official exchange rate is applied.  The auditors'

---

https://www.nytimes.com/2021/07/17/business/lebanon-riad-
salameh.html.

[15] Kareen Chehayeb, UN Rep Slams Lebanon Central Bank Chief Over
Economic Crisis, Al Jazeera (Nov. 12, 2021),
https://www.aljazeera.com/economy/2021/11/12/un-rep-lamslebanon-
central-bank-chief-over-economic-crisis.

[16] Tom Arnold & Ellen Francis, As Lebanon's Banks Struggle to
Raise Capital, a Deadline Looms, Reuters (Feb. 15, 2021),
https://www.reuters.com/article/uslebanon-crisis-banks-
insight/as-lebanons-banks-struggle-to-raise-capital-a-deadline-
loomsidUSKBN2AF0JQ.

[17] The audit was conducted by Deloitte & Touche and DFK
Fiduciaire du Moyen Orient.

preliminary notes, however, disclaim the auditors' opinion as
"uncertain" due to the many crises that have affected the
Lebanese economy.  The disclaimer also states that the financial
statements contained in its audit report do not adequately
disclose "a material uncertainty . . . that may cast significant
doubt on [IBL's] ability to continue as a going concern."

IBL argues that, whatever its precise financial condition,
it is "in a strong position relative to other Lebanese banks."
IBL relies on the Declaration of Karim Habib, a Director of IBL.
According to Habib, Banque du Liban ("BdL"), Lebanon's central
bank, does not consider IBL a "delinquent" bank, and IBL ranks
highly in the Lebanese banking sector on metrics such as total
assets, capital adequacy ratio, average asset-to-cost ratio, and
allowances for expected credit losses.  IBL also asserts that
its solvency should be assessed by whether it is meeting its
"obligations in the ordinary course of business as they accrue,"
which it is.  U.S. Pipe & Foundry Co. v. City of Hornell, 263
N.Y.S. 89, 89 (Sup. Ct. 1933); see also Soc'y Milion Athena v.
Nat'l Bank of Greece, 9 N.Y.S.2d 177 (Sup. Ct. 1938).

In any event, IBL argues that Iraq Telecom no longer needs
any attachment to enforce the Award because Lebanese courts are
functioning, despite Lebanon's financial crisis, and Iraq
Telecom can enforce any judgment against IBL in Lebanon.  And,
Iraq Telecom has already obtained an attachment of IBL's

property in Lebanon to enforce the Award.  Pursuant to a
Lebanese court order of March 10, 2022, IBL's money held by BdL,
all assets in IBL's Beirut headquarters, and IBL's shares in
five Lebanese companies and six real estate holdings have been
attached to secure a $2.832 million judgment against IBL.

IBL further explains that under Lebanese law a judgment-
debtor "located in Lebanon" is entitled to pay a debt in
Lebanese pounds ("LBP").  Due to BdL controls, all bank checks
issued in Lebanon are payable only in LBP or in "non-fresh" U.S.
Dollars ("USD") that cannot be wired out of the country.[18]  The
rate of exchange would be at Lebanon's official exchange rate,
which is currently approximately 1,500 LBP to $1.  Therefore,
IBL asserts that it would be entitled to pay the Award in
Lebanon in an amount calculated at the official exchange rate in
Lebanon.  If IBL does as it has outlined it is entitled to do,
Iraq Telecom could rightly argue that this would deprive Iraq
Telecom of the full benefit of the Award.[19]

Thus, the existence of the Lebanese attachment does not
alter the conclusion that an arbitration award received against

---

[18] As further described below, "fresh money" is defined by the
Lebanese central bank as funds denominated in foreign currency
that have been deposited at a Lebanese bank in cash, or via
international funds transfer, after April 9, 2020.

[19] Iraq Telecom has offered evidence that the international
exchange rate as of August 2020 was 4,000 LBP to 1 USD, and may
now be as high as 20,000 LBP to 1 USD.

IBL may be ineffective without the attachment of the IBL assets
in New York.  Of course, should Iraq Telecom succeed in
recovering funds pursuant to the Lebanese attachment order, any
attachment in this district will be reduced by that sum.[20]

Finally, IBL argues that even if it were deemed to be
insolvent or close to insolvency, Iraq Telecom does not need any
attachment since IBL will always be here:  it needs its New York
correspondent bank accounts to conduct financial transactions
for the benefit of its customers.  Therefore, according to IBL,
the attachment does nothing more than give a priority of
recovery to Iraq Telecom without any showing that Iraq Telecom
is entitled to that priority.  This last issue is addressed
below, in the context of the extraordinary circumstances
presented by the attachment petition.  Generally, however, the
fact that the party subject to the attachment cannot readily
move its property out of the jurisdiction does not weigh against
an attachment that is otherwise properly made.

C.  Cause of Action and Amount of Counterclaims

Iraq Telecom has shown that it has a cause of action to
enforce the Award and any award entered in the Second
Arbitration.  It has also shown an entitlement to damages in an

---

[20] At oral argument, IBL represented that it was taking steps,
due to the attachment in Lebanon of all of its assets, to pay
Iraq Telecom the full Award amount as soon as possible.

amount significantly greater than any counterclaims that IBL could assert. Other than a single counterclaim for the indemnification of damages dismissed by the arbitration panel in the Award, IBL has not asserted any claim against Iraq Telecom.[21]

D.    Extraordinary Circumstances

Due to the extraordinary circumstances described below, Iraq Telecom has not shown an entitlement to an attachment in an amount greater than $3 million. As already explained, Iraq Telecom has not shown a likelihood of success in obtaining an award greater than $8.92 million through arbitration proceedings. But for the extraordinary circumstances that exist here, an attachment of $8.92 million would be entered.

Any sizeable attachment of IBL correspondent bank accounts runs the not inconsiderable risk of forcing IBL, which appears to be insolvent, into liquidation. Given the severity of the Lebanese economic crisis and IBL's role as one of Lebanon's more stable banks, an IBL liquidation could have calamitous implications for the Lebanese economy and for IBL's other creditors, including its depositors. Indeed, the funds held in IBL's correspondent accounts are primarily for the benefit of its depositors. Iraq Telecom has not shown that it has priority

---

[21] In the first arbitration, IBL brought a counterclaim against Iraq Telecom for defamation and libel under Lebanese law. Because the arbitrators found IBL liable for fraud, the panel dismissed the counterclaim.

in recovering from IBL over those depositors.  Finally, an attachment of funds in a correspondent bank account in New York in the circumstances presented here may have a deleterious effect on the international banking system and New York's role as a linchpin in that system.

1.   The Economic Crisis in Lebanon

Lebanon has been in a financial crisis since at least 2019, following a series of economic shocks and a bank panic.  The World Bank describes Lebanon's economy as "likely to rank in the top 10, possibly top three, most severe crises episodes globally since the mid-nineteenth century."[22]

Lebanon ties the value of the LBP to the USD.  In order for Lebanese banks to store the amount of USD necessary to maintain the stability of LBP, the country relied for decades on a steady stream of foreign investment.  As foreign investment slowed, Lebanese banks began offering high returns on deposits in USD to attract new USD deposits -- which could be to be used to pay earlier depositors.[23]  This effort collapsed in 2019, and a bank

---

[22] Lebanon Economic Monitor, Spring 2021: Lebanon Sinking (to the Top 3) at xi, The World Bank, May 31, 2021, https://documents1.worldbank.org/curated/en/394741622469174252/pdf/Lebanon-Economic-Monitor-Lebanon-Sinking-to-the-Top-3.pdf.

[23] The New York Times and other news reporting identify the 2011 war in Syria and the growing power in Lebanon of Hezbollah, which has been designated by the United States as a Foreign Terrorist Organization, as turning points that deterred the foreign investment in Lebanon.

panic ensued.  In November 2019, Lebanon imposed strict restrictions on international transfers of money and cash withdrawals of foreign currency, including limiting withdrawals of funds denominated in a foreign currency above threshold amounts.  The crisis has only deepened as a result of the COVID-19 pandemic.

Surveying the state of the crisis as of August 2020, the FDD Report recommended merging the fourteen most important banks into the five remaining "viable" banks in Lebanon.  IBL is one of those viable banks.[24]

In light of IBL's perilous economic condition, the attachment poses a not insignificant risk of forcing IBL -- already likely insolvent -- into failure.  Because of IBL's role in the Lebanese economy, such a failure has the potential to impact the economy of the entire nation.  These severe repercussions militate against granting Iraq Telecom's request to confirm (much less to expand) the attachment.

2.   Lebanese Central Bank Regulations

Lebanese central bank regulations magnify the impact on IBL of the attachment of its correspondent bank accounts.  As described below, the "fresh money" dollars in IBL's New York

---

[24] In addition to its relative financial health, the FDD Report identifies as one of the reasons that IBL may survive the crisis the fact that it is "relatively clean with regard to allegations of exposure to Hezbollah."

correspondent accounts constitute nearly all of IBL's liquid fresh dollars globally. With the attachment effected pursuant to the January 19 Order, IBL has faced extreme difficulty in processing U.S. dollar transactions for its customers.

The $42 million in funds currently attached in IBL's New York correspondent accounts fall into four categories. One category is comprised of $4.5 million in EFTs, or inward transfers that were frozen midstream upon service of the January 19 Order of Attachment on the New York correspondent banks.[25]

The other three categories relate to Lebanese commercial and retail bank regulations issued by BdL in order to mitigate Lebanon's liquidity crisis. Since October 2019, BdL has issued a series of regulations requiring banks to maintain foreign currency offshore.

On April 9, 2020, BdL issued Basic Circular No. 150 ("BdL 150"), as amended on May 11, 2020 and February 25, 2021, exempting Lebanese banks from mandatory minimum reserve requirements on certain "fresh money" funds. "Fresh money" is defined as segregated USD funds deposited in a Lebanese bank after April 9, 2020. BdL 150 requires Lebanese banks to

---

[25] Iraq Telecom contends that IBL has not produced evidence showing that $4.5 million are in fact midstream EFTs. Iraq Telecom has agreed that, upon that showing, it is willing to release those funds "in the spirit of compromise."

maintain and process "fresh money" funds in offshore
correspondent accounts, and not to encumber those funds or
otherwise restrict a customer's use, withdrawal, or transfer of
those funds.  IBL asserts that $8.5 million in "fresh money"
held pursuant to BdL 150 has been frozen as of February 1, 2022.
But for the attachment, these funds would have been available to
fund transfers ordered by an IBL client of their deposited fresh
money.[26]

On August 27, 2020, BdL issued Basic Circular No. 154 ("BdL
154"), requiring Lebanese banks to maintain at least 3% of their
total foreign currency deposits as of July 31, 2020 in reserve
and without encumbrance in their offshore correspondent
accounts.  These funds provide liquidity for foreign currency
transactions.  IBL has not yet met the 3% liquidity requirement,
but BdL has approved IBL's plan to achieve compliance.  That
plan requires IBL to maintain the funds that IBL currently holds
in the correspondent accounts and increase those deposits.  IBL
asserts that $17.36 million was held in its correspondent
accounts pursuant to BdL 154 and has now been frozen.

---

[26] Proceeds of inward EFT transfers to IBL clients are credited
to clients' accounts, and the funds are held in the
correspondent accounts for the benefit of the clients and in
order to facilitate further transactions at the clients'
instructions.

42

Finally, on June 8, 2021, BdL issued Basic Circular No. 158, as amended on August 5 and September 29 ("BdL 158"), which provided an additional exemption from withdrawal restrictions to certain eligible customers. BdL 158 permits eligible customers to make gradual withdrawals of USD from a special sub-account established by the bank for that purpose. The bank is in turn required to maintain half of the liquidity necessary to service these withdrawals in USD in offshore correspondent accounts. IBL asserts that $12.24 million held pursuant to BdL 158 has been frozen.

Accordingly, two of the four categories of funds held in IBL's New York correspondent accounts include funds held in compliance with "fresh money" regulations (BdL 150 and BdL 158); one of the four represents funds held pursuant to liquidity requirements (BdL 154); and one consists of funds related to EFTs. The continued attachment of $42 million will cause IBL to fall out of compliance with crisis management regulations imposed by BdL.

### 3.	Impact on IBL Depositors

The attachment has already interfered with the access of IBL's depositors to their funds. IBL holds no USD-denominated correspondent banking accounts outside of Lebanon other than those that are attached through the Order of January 19. To facilitate customer transactions in USD, the funds held in IBL's

43

New York correspondent accounts must be accessed.  As a result
of the January 19 attachment, IBL has resorted to converting
non-USD funds held in its European correspondent accounts into
USD in order to execute EFTs in USD for its customers.  In six
weeks, it has depleted roughly 70% of those non-USD currency
deposits.  According to a March 12, 2022 report commissioned by
IBL from PKF Chartouni ("PKF Report"),[27] less than 0.06%, or
roughly $10,000, held in IBL's New York correspondent bank
accounts is proprietary to IBL.[28]

In sum, almost all of the funds held in the attached New
York correspondent accounts are held for the benefit of IBL's
clients.  The attachment of those funds impairs the ability of
IBL customers to participate in international financial
transactions in USD.  The General Counsel of BdL, Boutros
Kanaan, who submitted a declaration in this action, opines that
attachment may have adverse consequences on the efforts BdL has
taken to preserve depositors' access to fresh funds and on

---

[27] PKF Chartouni is an international accounting and business
advisory firm.  The PKF Report cautions that the "agreed upon
procedures" under which it did its examination "did not
constitute a full audit in accordance with International
Standards on Auditing" and therefore that its report does not
constitute an audit opinion.

[28] The PFK Report classified three types of funds -- interest on
the accounts, interest on overnight liquidity management
transactions, and fees and operating expenses -- as proprietary
funds.

44

Lebanon's sovereign interest in protecting its banking system during a time of extreme financial stress in Lebanon. After describing BdL 150, 154, and 158, Kanaan reports:

> The attachment of funds standing to the credit of Banks operating in Lebanon in overseas correspondent accounts may have adverse consequences on critical elements of BdL's emergency measures and policies, as set forth above, aimed at preserving depositors' unrestricted accessibility to and right to dispose of their fresh funds and safeguarding Lebanon's sovereign interest in preserving the soundness of its banking system and depositors' rights. In particular, an attachment order may give priority to the asserted rights of a private party, in the present case the Petitioner [Iraq Telecom], over the interests of the depositors in Lebanese banks and Lebanon's sovereign interests as embodied in the measures and regulations discussed above.

For its part, Iraq Telecom has made no showing that in the event IBL should fail it would have a superior right in any liquidation to IBL's assets. It has not shown, for instance, that it would have a superior right to IBL's depositors.

IBL cannot continue indefinitely to provide the international banking services in USD on which its depositors rely without access to the attached correspondent accounts. Under the circumstances shown here, this Court will not further burden those innocent third parties.

4. New York Correspondent Banks

The international banking system relies on freely accessible correspondent banking services provided by multinational financial institutions based in New York,

45

including the three banks affected by the January 19 Order. International transfers of USD must be made through a U.S. correspondent account.  In other words, all USD transactions must clear through a U.S. bank account.  It is entirely proper to consider whether an attachment on the scale at issue here will undermine confidence in New York's financial institutions and be perceived as weakening the protections offered by New York law for property and banking services.

Iraq Telecom argues that this is a rare case, and that an attachment here of as much as $97 million will not undermine confidence in the functioning of the international financial system or correspondent bank accounts in New York.  It points out, accurately, that most decisions discussing the importance of correspondent banking relationships have done so in cases where the bank itself is not the debtor.  Here, the arbitration panel found that IBL had engaged in fraud.  Moreover, an attachment is only being sought because there is reason to believe the debtor bank is insolvent.  Together, these two facts make it unlikely that there will be a repetition of a similar attachment request.  Finally, Iraq Telecom points out that the N.Y. C.P.L.R. contains exemptions from attachment, and corresponding bank accounts are not among those statutory exemptions.  See, e.g., N.Y. C.P.L.R. §§ 5201, 5205, 6202.

46

These arguments might have more force if Iraq Telecom had an arbitration award of $97 million which it was seeking to confirm and enforce. But even then, it would have to address the question of why it should be given priority over the other creditors of IBL, including its depositors, and in a manner that might trigger a bank's collapse and have profound repercussions for a nation's economy. In any event, any such application should be supported by expert testimony on New York's correspondent banking system to allay a court's concern that unintended damage will not be done to that system by the attachment.

5. The Principal Wrongdoer

Finally, the principal wrongdoer in, and beneficiary of, the scheme perpetrated against Iraq Telecom is not IBL but Barzani. While Iraq Telecom cannot be faulted for pursing the assets of a more accessible malefactor instead of those of a more culpable co-conspirator, it is nonetheless worth observing that Iraq Telecom may have other avenues to make itself whole. Attachments should not be lightly imposed, and the unpredictable effect of maintaining the attachment on IBL in these circumstances counsels restraint.

E. Assets Subject to Attachment

As explained above, Iraq Telecom has shown that it is likely to obtain confirmation of the $3 million Award and up to

47

$5.92 million in the Second Arbitration.  Due to extraordinary
circumstances, however, the Order of Attachment has been
modified to attach $3 million.

F.    Bond

In the event the attachment is confirmed, IBL has requested
that the bond be increased above the $100,000 undertaking posted
by Iraq Telecom as security pursuant to the January 19 Order.
It requests a bond in the amount of 10% of any attachment.
IBL's request is granted in part.  A bond of $100,000 is
sufficient for the attachment of the Award amount of $3 million.
If Iraq Telecom succeeds in showing a right to a larger
attachment, it will be required to post a bond of 10% of that
increased amount.

G.    Expansion of Attachment

Iraq Telecom seeks to expand the January 19 Order of
Attachment to all property owned by IBL in this district.  For
the reasons explained, this request is denied.  If Iraq Telecom
wishes to make an application at a later time to attach newly
discovered property, it must identify that property with
particularity and demonstrate a reason to believe that the
property is in fact proprietary to IBL.

**Conclusion**

Iraq Telecom's motion to confirm the January 19 Attachment
Order is granted to the extent of $3 million.  IBL's cross-

48

motion to vacate the same Order is granted in part. Iraq

Telecom's motion to expand the January 19 Order is denied.

Dated:     New York, New York
           March 16, 2022

                                    _____
                                          DENISE COTE
                                    United States District Judge

# Exhibit 4

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
IRAQ TELECOM LIMITED,                   :      21cv10940 (DLC)
                                        :
                      Petitioner,       :           ORDER
                                        :
            -v-                         :
                                        :
IBL BANK S.A.L.                         :
                                        :
                      Respondent.       :
                                        :
----------------------------------------X
```

DENISE COTE, District Judge:

On January 19, 2022, by motion of the petitioner Iraq Telecom Limited ("Iraq Telecom"), an ex parte Order of Attachment was entered in connection with correspondent relationships that respondent IBL Bank S.A.L. ("IBL") maintains with three New York-based banks. On February 4, with consent of the parties, a modified Order was entered. Approximately $42 million has been attached pursuant to the January 19 Order.

On January 31, Iraq Telecom moved to confirm the January 19 Order. On February 14, IBL opposed the motion and cross moved to vacate the Order of Attachment. Oral argument was held on March 16. It is hereby

ORDERED that the January 19 Order of Attachment, as amended by the February 4 Order, is vacated as to Citibank and JP Morgan Chase.

IT IS FURTHER ORDERED that, as to Bank of New York Mellon,
the January 19 Order of Attachment is vacated as to any amount
greater than $3 million.

Dated:      New York, New York
            March 16, 2022

                                    _____
                                         DENISE COTE
                              United States District Judge

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
**CIVIL PRE-ARGUMENT STATEMENT (FORM C)**

**ADDENDUM B**

No. 22-540

District Court 21-cv-10940-DLC

**I.      Issues Proposed To Be Raised on Appeal**

The issues on appeal are:

1.  Whether the District Court erred in ruling Iraq Telecom was unlikely to succeed on the merits in the Second Arbitration, and thus did not did not satisfy New York CPLR 6212(a)'s attachment requirements, by applying an incorrect burden of proof, adopting calculations of damages in conflict with undisputed facts and undisputed Lebanese law, and requiring Iraq Telecom to prove damages.

2.  Whether the District Court erred in ruling that it had discretion to vacate an attachment on the basis of "extraordinary circumstances" where Iraq Telecom had established an entitlement to the attachment under New York CPLR 6201 and 7502 and that the attachment was necessary to the security of the Petitioner, and in ruling that extraordinary circumstances allowed vacatur of the attachment here.

**II.      Applicable Appellate Standard of Review**

This Court reviews the district court's application of the statutory factors governing attachment for abuse of discretion.  *See Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006) (a "motion court presented with an application for an order of attachment" may be reversed for abuses of discretion if it "applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceed[s] on the basis of an erroneous view of the applicable law" (internal citation and quotations omitted)).

The existence of an extraordinary circumstances exception to the statutory factors governing attachment is a question of law that this Court review *de novo. See Ziparo v. CSX Transportation, Inc.*, 15 F.4th 153, 158 (2d Cir. 2021) ("[O]ur review of a district court's interpretation of a statute, a pure question of law, is [] *de novo.*" (quoting *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014))).